328 So.2d 771 (1976)
BERRY BROTHERS GENERAL CONTRACTORS, INC., Plaintiff-Appellee,
v.
AIR MARINE, INC. and Dan W. Slaton, III, Defendants-Appellants.
No. 10627.
Court of Appeal of Louisiana, First Circuit.
March 1, 1976.
Robert J. Adams, Lafayette, for defendants-appellants.
John E. Conery, Franklin, for Berry Bros.
Frank Judycki, Morgan City, for Dan Slaton.
Before SARTAIN, EDWARDS and BENNETT, JJ.
SARTAIN, Judge.
Plaintiff, Berry Brothers General Contractors, Inc., (Berry), is the owner of a 1973 Cessna 185 Skywagon amphibious aircraft.
*772 On April 30, 1973, this aircraft was damaged as a result of a crash while the same was being piloted by Dan W. Slaton, III (Slaton), an employee of Air Marine, Inc. (Air Marine). This suit is for the recovery of damages occasioned to the airplane as a result of the accident. Judgment was rendered in the trial court in favor of Berry and against Air Marine and Slaton, jointly, severally and in solido, in the amount of $43,773.26, from which judgment Air Marine now appeals. We affirm.
Berry's petition alleges, inter alia, certain specific acts of negligence on the part of the pilot, Slaton. In addition, the petition charges that Air Marine failed to provide a pilot (Slaton) with the necessary skills to avoid such an accident, thereby breaching Air Marine's obligation to Berry under contract wherein the former was to furnish the latter a competent pilot.
Slaton filed a general denial as to the allegations of negligence on his part. Air Marine, while denying negligence on the part of Slaton, also defends on the grounds that in the event Slaton is deemed to be incompetent, then Berry assumed the risk flowing from his incompetency in that Berry was fully cognizant of Slaton's capabilities. Air Marine further contends that at the time of the accident Slaton was a borrowed employee of Berry and that Berry rather than Air Marine is responsible for any negligence on the part of Slaton.
The trial judge, in his oral reasons for judgment, held that Slaton was a competent pilot but that the accident was due to negligence on his part. The judge a quo further found that Slaton was not a borrowed employee but was performing services in the furtherance of Air Marine's business.
It is undisputed that Berry is in the business of maintaining and servicing oilfield installations. It is also conceded that Air Marine is in the business of chartering aircraft and/or pilots to various business concerns.
Shortly before noon on the day of the accident Slaton was dispatched from Air Marine's office to Berry's hangar at Patterson Memorial Airport, Patterson, Louisiana. There he met the dredging superintendent of Berry, Mr. John Lapeze. Slaton was informed by Lapeze that they were to go to a Shell Oil Company rig near Gibson (Shell-Gibson), pick up another passenger, then go to another Shell Oil Company rig near Chauvin (Shell-Chauvin), fly back to Shell-Gibson, then return to Patterson, Louisiana.
The aircraft left Patterson Airport with Slaton as pilot and Lapeze as passenger. They landed in a canal at Shell-Gibson and while taxiing to a dock they felt the left float strike a submerged object. They docked, remained there for about fifteen minutes, picked up a passenger and took off again for Shell-Chauvin.
The canal at Shell-Chauvin runs in a northeasterly to a southwesterly direction. The barge is located on the southern bank. The wind was blowing from the south at about 15-20 m.p.h. Slaton flew over the canal and observing no physical object to impede his landing, proceeded to land. His approach was northeast to southwest. The aircraft touched down at a speed of 60-80 m.p.h. Slaton then attempted to turn the plane more to the north or to his right but the aircraft failed to respond to his efforts to do so. The left wing then struck a portion of the barge causing extensive damages to the aircraft. The speed of the aircraft at the moment of impact was estimated to be anywhere from 30-50 m.p.h.

ASSUMPTION OF RISK
The defense's assumption of risk is in response to Berry's allegations relating to Slaton's inability to pilot an amphibian aircraft. It is obvious from the record that Berry abandoned this averment because the evidence adduced by Berry is to *773 the contrary, i.e., that Slaton was a qualified pilot but used faulty judgment on this particular occasion. Slaton had piloted Berry's aircraft on no less than five nor more than twenty previous occasions. He was not only properly licensed to fly this type of aircraft but he had done so with several of Berry's employees, who expressed confidence in his ability. The trial judge properly rejected this defense.

NEGLIGENCE OF SLATON
There are two versions as to how this accident occurred, one advanced by Air Marine and the other urged by Berry.
Air Marine argues that the accident was not the result of a pilot error but was occasioned by the damaged left float. When the aircraft was brought back to the hangar at Patterson after the accident, it was inspected by Slaton and others. A small slit was observed on the bottom of the left float. Slaton could not recall which compartment. The report of the accident to the federal authorities relates the incident of striking a submerged object at the Shell-Gibson location. However, it notes that the "Impact of object hit on previous landing was not thought to be detrimental in any way to flight characteristics or handling of aircraft in any way." This report was signed by Slaton.
Defendant argued in brief and orally that it was water in the left float which caused this float to submerge to a depth where it destroyed the pilot's ability to make a right turn by use of his controls.
Berry's version of the cause of the accident is the same as that given by Slaton. While acknowledging his previous opinion that the damaged float caused the accident, Slaton stated that after much thought and consideration of the factors involved he had to conclude that he landed "too long" and "too fast" under the prevailing conditions. He explained that notwithstanding the length of the canal, he landed too close to the barge. Further, the canal was lined with trees that shielded the canal itself from strong gusts of crosswind. However, near the barge there was a break in the trees which permitted this wind to come through. He said that after he touched down he had reduced his speed to a point where the crosswind effect overcame the "rudder" control of the aircraft. The wind from the left forced the tail of the aircraft to the right which in turn forced the nose of the plane to the left. Had he landed near the end of the canal he could have maintained a greater water speed for a longer distance and thereby insured mor "rudder" control. He expressed this same view in a pretrial deposition which was offered in evidence. He discounted any possible effect that prior damage to the left float might have had on the difficulty he experienced near the barge because he had observed the float in the water at Shell-Gibson and encountered no difficulty in taking off at this location.
Slaton's testimony relative to landing in close proximity to the barge, the crosswind, and the lack of rudder control is corroborated by Lapeze.
The trial judge in his reasons for judgment stated:
"On the question of liability, the Court finds that the plaintiff has proven by a complete preponderance of the evidence that the cause of the accident and the damage resulting therefrom to Berry Brothers' airplane was caused by the fault and negligence of Mr. Dan Slaton, the pilot. Mr. Slaton, who has otherwise in his career been an excellent pilot, honestly and forthrightly testified before this Court that initially he believed the cause of the damage was a hole in the float which took on water and caused the plane to veer to the left. However, upon serious reflection, he now believes that the cause of the accident was the fact that he landed `too long and too fast' and that this was the principal cause of the accident; for if he had not landed so long or so fast, he would not have collided with the barge.

*774 The Court accepts Mr. Slaton's testimony as corroborated by Mr. Lapeze that this was the primary cause of the accident and the cause of the damages relating thereto. Therefore, Mr. Slaton was at fault in causing the accident and will be held liable therefor".
We find that the conclusion reached by the trial judge, above, is amply supported by the record.

BORROWED EMPLOYEE
As stated above, Air Marine seeks to avoid liability on the grounds that Slaton was a borrowed employee or an employee pro hac vice of Berry. If this is correct then Berry, as master, instead of Air Marine is responsible for the torts of Slaton. Inasmuch as a servant can have but one master, Air Marine is then relieved of liability because the relationship of master and servant which previously existed between Air Marine and Slaton is determined to be suspended. Universal Eng. & B., Inc. v. Lafayette Steel Erec. Corp., 235 So.2d 612 (La.App.3d, 1970). The burden of proof in establishing that an employee is the borrowed servant of another rests with the employer. Accordingly, it is essential that the borrowing employer has the right of control, that the borrowing employer does, in fact, exercise control over the employee, that the general employer has relinquished the right of control, and that the employee is performing work for the borrowing employer in the latter's business. Universal Eng. & B. v. Lafayette Steel Erec. Corp., above. In 17 A.L.R.2d 1388, the essential elements are stated to include the right to select and discharge the employee; the right to supervise and direct, not merely the work to be done, but the method by which it should be done; and, the manner in which the employee is paid.
In the instant case, Berry would call Air Marine and request a pilot. If one was available Berry would be so notified and the pilot dispatched to Berry's hangar. Air Marine charged Berry on an hourly basis, $10.00 per hour for flying time and $5.00 per hour for standby duty. Slaton was paid by Air Marine for a five day work week. The amount of his salary does not appear in the record.
The cases of Benoit v. Hunt Tool Co., 219 La. 380, 53 So.2d 137 (1951) and McCutchen v. Fruge, 132 So.2d 917 (La.App.3rd, 1961), contain exhaustive reviews of the jurisprudence of this state involving factual situations wherein a determination of the status of a paid employee was essential to a resolution of the issue on liability.
The court in McCutchen stated:
". . . we think it is now settled that the most important test to be applied in determining the status of the employee is to ascertain who controls him in that employment, and more particularly, who has the power and right to control and direct him in the performance of his work."
The trial judge, in concluding that Slaton was not a borrowed employee of Berry at the time of the accident, stated:
"With regard to the liability of the defendant Air Marine, it was established at this trial that Mr. Slaton was at the time of the accident and for some time prior thereto a charter pilot on the payroll of Air Marine, Incorporated; that for his services, Air Marine made a charge of ten ($10.00) dollars per hour for flying time and five ($5.00) dollars per hour for standby time and that these were in fact the charges made to Berry Brothers for this flight and previous flights.
"It was established that on the date of the accident, Mr. Slaton was in fact employed by Air Marine, Incorporated; that he was acting within the course and scope of his employment for Air Marine.
"The defendant Air Marine seeks to escape liability in this case by having the *775 Court determine Mr. Slaton was at the time of the accident a borrowed servant or employee; and in furtherance thereof, attempted to prove that Berry Brothers or its employees exercised direct and complete control over Mr. Slaton and his flying activity.
"The Court decides otherwise. It was shown to the complete satisfaction of the Court by the testimony primarily of Mr. Slaton, himself, and by that of Mr. Merryman and Mr. Zweigle that Mr. Slaton was not a borrowed employee as defined by our jurisprudence. The only instructions given to Mr. Slaton by Berry Brothers or any of its employees was that of the destination of the flight. In all other respects, Mr. Slaton testified that he was in sole command of the aircraft and had the unlimited control and decision as to whether or not the aircraft was safe to fly, whether the trip would in fact be made because of any unsafe attitude of the aircraft, that he was in sole command as to when the flight would commence and when it would end, that any decision with regard to the flying or mechanical operation of the aircraft was his and his alone. He further testified that if he had been instructed by Air Marine at any time during the flight to return to the base or to take some other action, he would have obeyed the orders of his superiors.
"But more importantly from the other side of the coin, the only control exercised by Berry Brothers over Mr. Slaton was to tell him the destination of the flight. The Court views this as far, far insufficient to establish that Mr. Slaton was at the time of this accident a borrowed servant or employee. The Court rather finds that at the time of the accident, Mr. Slaton was in fact an employee under the control and supervision of his employer, Air Marine, Incorporated. The Court therefore finds that under the doctrine of respondeat superior, Air Marine, Incorporated is liable to the plaintiff, Berry Brothers, for damages resulting from this accident and to this aircraft."
We find that his decision in this respect conforms to the facts presented and represents a proper application of the law.
Accordingly, for the above reasons, the judgment of the district court is affirmed at appellant's costs.
AFFIRMED.