406 So.2d 1378 (1981)
Willie W. JOHNSON, Plaintiff-Appellee,
v.
James A. ALEXANDER, et al, Defendants-Appellants.
No. 8450.
Court of Appeal of Louisiana, Third Circuit.
November 10, 1981.
Rehearings Denied January 4, 1982.
*1379 McClain, Morgan & Savoy, Robert E. Morgan, Lake Charles, for plaintiff-appellee.
Voorhies & Labbe, William M. Bass, Lafayette, for defendant-appellant.
Raggio, Cappel, Chozen & Berniard, Christopher M. Trahan, Lake Charles, for intervenor-appellee.
Before GUIDRY, FORET and DOUCET, JJ.
*1380 GUIDRY, Judge.
Plaintiff, Willie W. Johnson, instituted this action against defendant, James A. Alexander, a backhoe operator, for damages sustained when a steel pipe being lifted by Alexander fell and struck plaintiff's forefoot causing extensive injuries. Subsequent to the filing of plaintiff's petition, United States Fidelity and Guaranty Company (hereafter USF&G), workmen's compensation insurer of plaintiff's employer, Vincent Construction Company, Inc., intervened praying for reimbursement for medical expenses and workmen's compensation benefits paid to Johnson as a result of his work-related injuries. Plaintiff filed several amending and supplemental petitions additionally naming Dupont and Alexander Equipment Corporation, the regular employer of Alexander, and its liability insurer, Western World Insurance Company, as defendants. Prior to trial, the parties stipulated that intervenor, USF&G, had paid workmen's compensation benefits to plaintiff in the sum of $7,540.00 as well as medical expenses of $1,495.37.
The trial court held in favor of plaintiff granting judgment against all defendants, in solido, in the sum of $102,479.06 with interest until paid. Additionally, the trial court ordered that intervenor, USF&G be paid for its expenditures with preference in accordance with LSA-R.S. 23:1103.[1] Defendants appeal suspensively from that judgment.

FACTS
On February 22, 1978, plaintiff, Willie W. Johnson, was employed as a pipefitter by Vincent Construction Company, Inc. (hereafter Vincent) and was engaged in laying firelines at the Continental VCM plant in Westlake, Calcasieu Parish, Louisiana. At the time of the accident, Vincent's pipefitting crew, of which plaintiff was a member, was preparing a length of steel pipe for installation. The pipe was approximately twelve inches in diameter, twenty feet in length, and weighed between 1200 and 2000 pounds. Immediately prior to the accident, the pipe was situated on pipe jacks, which elevated the pipe approximately three feet above the ground, with a portion of the pipe extending underneath a welding shed owned by Vincent. Before the pipe could be installed, it was necessary to affix a valve upon the flange of the pipe which necessitated that the pipe be moved from underneath the shed. Plaintiff's supervisors, also Vincent employees, instructed him and a co-worker to use a 550 Ford Tractor (commonly referred to as a backhoe) to raise the pipe off of the pipe jacks and place it on the ground.
Prior to February 22, 1978, Vincent contracted with Dupont and Alexander Equipment Corporation (hereafter Dupont) for the rental of a backhoe and the services of an operator to assist in laying the firelines at the VCM plant. The backhoe furnished by Dupont was operated by defendant, James Alexander.[2] At the request of one of the pipefitters in plaintiff's crew, Alexander positioned his machine so that the *1381 bucket of the backhoe was located at the approximate mid-point of the pipe. Subsequently, a choker was wrapped around the pipe by plaintiff and a co-worker and the steel eye of the choker was slipped over one or more of the teeth of the backhoe bucket in order that the machine could lift the pipe and place it on the ground.[3] Plaintiff testified that within seconds of signaling Alexander to lift the pipe, the choker holding the pipe slipped off the teeth of the backhoe and the pipe fell to the ground onto plaintiff's forefoot crushing three of his toes and allegedly causing the damages complained of in this suit.

ISSUES
The following issues are presented on appeal:
(1) Was Alexander negligent in the operation of the backhoe and if so, was his negligence the cause in fact of plaintiff's injuries?
(2) Was the defendant, James Alexander, a borrowed employee or statutory employee of Vincent Construction Company, Inc. and if so, does his status as such affect plaintiff's right of recovery in tort?
(3) Was plaintiff contributorily negligent so as to bar his recovery?
(4) Did plaintiff knowingly assume the risk of harm presented by moving the pipe with the backhoe?
(5) Is the award of damages by the trial court to the plaintiff excessive?

WAS ALEXANDER NEGLIGENT IN THE OPERATION OF THE BACKHOE, AND, IF SO, WAS HIS NEGLIGENCE A CAUSE IN FACT OF PLAINTIFF'S INJURIES?
The record reflects that plaintiff and a co-worker wrapped the choker around the pipe to be lifted and placed the eye of the choker on one or two of the teeth of the backhoe bucket. Evidence adduced at trial indicates that when the bucket of the backhoe is pulled up tight against the forward boom of the machine, it results in the teeth of the bucket being pointed slightly upward. Apparently, this was the position of the teeth at the time the eye of the choker was placed upon the bucket prior to the accident. As the lifting began, the pipe's weight stretched out the choker and as the boom of the backhoe went up, it resulted in a changing of the plane of the backhoe teeth from a slightly upward position to a level position, and, depending upon how high the bucket is raised, eventually to a downward or negative position.
Testimony at trial indicates that there was only one choker at the jobsite available for use in lifting the pipe. The eye of the particular choker utilized was too thick to fit snugly and securely behind the shoulder of the backhoe teeth. Thus, obviously, special caution was required in lifting the pipe.
Fred Liebkemann, an expert in the field of mechanical engineering, testified that he examined a backhoe identical to the one in use at the time of plaintiff's accident. In the course of his examination, Mr. Liebkemann took various measurements and considered numerous variables present at the time of the accident, such as, the dimensions of the choker used, the extension of the boom of the backhoe, and the effect of the extension of the outriggers of the machine. Mr. Liebkemann testified that, by his calculations, with the outriggers of the machine fully extended and thus, the rear wheels raised six inches off the ground, and with the eye of the choker attached to a tooth of the backhoe bucket, the lifting of the pipe would be relatively safe as long as the teeth of the bucket were less than six feet from the ground. Liebkemann indicated that at a height of less than six feet, the teeth remained in an upward position thereby preventing the eye of the choker from slipping off. He further stated that at six feet above the ground, the teeth would be parallel to the ground, thus, presenting a more dangerous situation. Finally, Liebkemann testified that at a height of greater than six feet, the teeth of the backhoe would be in a negative position and the weighted eye would surely slip off.
*1382 Several witnesses, including Liebkemann and Alexander, himself, testified that the operator of the backhoe was in the best position to observe the changing angles of the teeth of the bucket as the bucket was lifted. According to the record, Alexander was experienced and knowledgeable regarding the operation of the 550 Ford tractor including the capabilities of and the dangers inherent in operating such a machine. Further, we note that he was charged with the duty of watching the bucket as he operated the machine since he was in complete control of the bucket's movement. It was Alexander who controlled the elevation of the pipe and it was Alexander who could maintain such elevation so as to avoid the critical point at which the choker would, in all probability, slip off the backhoe bucket.
The trial judge, in his written reasons for judgment, notes that there exists conflicting testimony in the record concerning how high the pipe was raised by Alexander. However, the trial judge concluded that the most reliable testimony was that of Alexander himself. Alexander testified that the teeth of the bucket were raised at least six feet and more likely seven feet above the ground at the time the pipe fell and injured the plaintiff. The trial court concluded that in light of the expert testimony received at trial, the teeth of the backhoe were, at the very least, at a precariously level position and most likely at a dangerously negative position at the time of the accident. Thus, the trial court concluded that Alexander was negligent in the operation of the backhoe in that he raised the bucket to such a height that the choker slipped off of the teeth of the backhoe and the pipe struck the plaintiff.
It is well settled that a reviewing court must give great weight to the factual conclusions of the trier of fact, and where there is a conflict in the testimony, reasonable evaluation of credibility and reasonable inferences of fact should not be disturbed, even though the appellate court may feel that its own evaluations and inferences are as reasonable. See Canter v. Koehring Company, 283 So.2d 716 (La.1973); Arceneaux v. Domingue, writ granted, 359 So.2d 1303 (La.1978), 365 So.2d 1330 (La.1978), on remand, 370 So.2d 1262 (La.App. 3rd Cir. 1979); Bertrand v. Aetna Casualty & Surety Company, 306 So.2d 343 (La.App. 3rd Cir. 1975), writ denied, 310 So.2d 641 (La.1975). We find no manifest error on the part of the trial court in his conclusion that defendant Alexander was negligent.

WAS ALEXANDER A BORROWED AND/OR STATUTORY EMPLOYEE OF VINCENT CONSTRUCTION COMPANY AT THE TIME OF PLAINTIFF'S ACCIDENT?
Defendant Alexander contends that he was a borrowed or statutory employee of Vincent at the time of the subject accident. In such regard, Alexander argues that since he was a borrowed or statutory employee of Vincent and thus, a co-employee of the plaintiff, the plaintiff may not maintain the instant action against him since such suits are prohibited by the Louisiana Workmen's Compensation Act, specifically LSA-R.S. 23:1032.[4] Should we conclude that Alexander *1383 is in fact a borrowed or statutory employee of Vincent and immune from suit by Johnson, this would necessarily raise as a corollary issue the responsibility of Alexander's general employer, Dupont, for its regular employee's delictual acts.
The issue of whether or not an individual is a "borrowed employee" is an issue of fact. Vincent v. Ryder Enterprises, Inc., 352 So.2d 1061 (La.App. 3rd Cir. 1977); LeBlanc v. Roy Young, Inc., 308 So.2d 443 (La.App. 3rd Cir. 1975), writ denied, 313 So.2d 240 (La.1975); Nichols Construction Corporation v. Spell, 315 So.2d 801 (La.App. 1st Cir. 1975). The most commonly employed test utilized by the courts to determine if one is a "borrowed servant" is the "right of control" test. Benoit v. Hunt Tool Co., 219 La. 380, 53 So.2d 137 (La.1951), on remand, 56 So.2d 292 (La.App. 1st Cir. 1952); McCutchen v. Fruge, 132 So.2d 917 (La.App. 3rd Cir. 1961); Pagitt Well Service, Inc. v. Sam Broussard, Inc., 293 So.2d 631 (La.App. 3rd Cir. 1974), writ denied, 295 So.2d 817 (La.1974); Berry Brothers General Contractors, Inc. v. Air Marine, Inc., 328 So.2d 771 (La.App. 1st Cir. 1976); Highlands Insurance Co. v. L. J. Denny and Son, 328 So.2d 779 (La.App. 3rd Cir. 1976), writ refused 333 So.2d 237 (La.1976); Dupre v. Sterling Plate Glass & Paint Company, Inc., 344 So.2d 1060 (La.App. 1st Cir. 1977), writ denied 347 So.2d 246 (La.1977).
In Dupre v. Sterling Plate Glass & Paint Company, Inc., supra, our brethren of the First Circuit stated:
"The most widely accepted test cited for establishing an employer-employee relationship involves the right of control. Benoit v. Hunt Tool Company, supra; Ruiz v. Shell Oil Company, 413 F.2d 310 (5th Cir. 1969) (action arising under the Longshoremen and Harbor Workers Compensation Act). The right of control has been described to include the following factors: the right to select and discharge the employee, the right to supervise and direct his work, and the method by which it is done, and the manner in which the employee is paid. (citations omitted)
Implicit in the right to control is the necessity that the lending employer relinquish its control over its employee to the borrowing employer and that he is performing work for the borrowing employer's business. Benoit v. Hunt Tool Company, supra; Berry Brothers General Contractors, Inc. v. Air Marine, Inc., supra. Additionally, the concept of the `borrowed employee' doctrine, by its terms, connotes an agreement of some type between the lender and the borrower, that the lender relinquished such control of the employee to the borrower. Ruiz v. Shell Oil Company, supra; Malone, § 57, pp. 61-66, pocket part, § 57, pp. 14-21."
In the instant action, it is not disputed that Alexander was regularly employed by Dupont and was paid for his services as a backhoe operator by that company. Vincent was charged an hourly rate for the use of the backhoe and the services of an operator. Dupont submitted invoices reflecting the number of hours of service performed by Alexander and payment for such services was made directly to that corporation in accordance with such invoices. Alexander was not paid by Vincent. Additionally, we note that the 550 Ford tractor employed by Alexander in the performance of his duties was owned and furnished by Dupont.
Regarding the degree of control exercised by the supervisory personnel of Vincent over Alexander's work, we observe that although Vincent's foreman directed Alexander as to what tasks needed to be accomplished, they did not instruct him as to how he was to accomplish and complete such jobs. The method and manner employed by Alexander to complete his assigned jobs were left strictly up to him. In addition, although Vincent had the authority to terminate the contract between it and Dupont if the services of the operator selected by Dupont were unsatisfactory, Vincent did *1384 not have the power to fire Alexander from his job as a backhoe operator.
The trial judge concluded that Alexander was not the borrowed employee of Vincent. We find no clear error in this determination. As we stated in Universal Engineers and Builders, Inc. v. Lafayette Steel Erector Corporation, 235 So.2d 612 (La.App. 3rd Cir. 1970):
"... there is a presumption that the general employer retains control of and remains liable for the negligent acts of his employee. If the general employer seeks to avoid liability on the ground that his employee is the `borrowed servant' of another, then the burden of proof rests upon the general employer to show that the relationship of master and servant which previously existed between the general employer and employee has been suspended, that a new such relationship has been created between the borrowing employer and that employee, and that such new relationship was in existence at the time the accident occurred."
Dupont has not successfully carried its burden of proof as set forth above. From our careful reading of the record, we conclude that Alexander was under the control of Dupont and was performing the work of the aforesaid corporation at the time of plaintiff's injury.
Alternatively, defendant contends that Alexander was a statutory employee of Vincent's Construction Co., Inc. and thus, a co-employee of the plaintiff which under the provisions of LSA-R.S. 23:1032 and 1061 would prohibit plaintiff from suing Alexander.[5] The trial court found no statutory employer-employee relationship. We find this conclusion to be manifestly in error.
There are four essential elements which must be present in order for LSA-R.S. 23:1061 to be applicable:
"(1) The relationship of principal-contractor (as distinguished from another type of relationship, i.e., vendor-vendee) must exist.
(2) There must be a contract between the principal and contractor for the execution by the contractor of the whole or any part of the work being undertaken by the principal.
(3) The `work' which is the subject of the contract must be part of the principal's trade, business or occupation.
(4) The injured employee must be engaged in the execution of the `work' as described above.

LSA-R.S. 23:1061; Broussard v. Heebe's Bakery, Inc., 263 La. 561, 268 So.2d 656 (1972); Liles v. Riblet Products of Louisiana, Inc., supra."

All of the essential requisites are present in the instant case. The record establishes a principal-contractor relationship between Vincent and Dupont whereby Dupont would furnish and maintain one 550 tractor with an operator at a rate of $24.00 per hour. The backhoe was to be utilized in the laying of firelines at the Continental VCM plant in Westlake. The laying of such firelines was part and parcel of the work undertaken at the VCM plant by Vincent. The record reflects, that Vincent, itself, owned and operated a number of backhoes, *1385 however, contracted for the subject machine due to a shortage of such equipment. The excavating of the trenches wherein the pipe would be placed and the lifting and moving of various supplies, both accomplished by the backhoe, were an essential and integral part of Vincent's construction contract, and is thus, part of Vincent's trade, business or occupation. Defendant Alexander was engaged in lifting pipe to be ultimately incorporated into the firelines at the time of plaintiff's accident, thus, he was engaged in the execution of the work which was the subject of Vincent's contract with Continental VCM clearly a part of Vincent's trade or business. Therefore, we conclude that Alexander was a statutory employee of Vincent's Construction Company at the time of plaintiff's injury.
Alexander avers that since he is a "co-employee" of the plaintiff by virtue of his statutory employer-employee relationship with plaintiff's employer, the instant suit is barred by virtue of LSA-R.S. 23:1032 which prohibits suits in tort as between co-employees.
Although LSA-R.S. 23:1032 and 1061 do not clearly provide that a statutory employee becomes a co-employee of all of the regular employees of the statutory employer, it appears to us that this status is necessarily intended by those cited sections of Louisiana's Workmen's Compensation Act.
LSA-R.S. 23:1032 explicitly provides that the rights and remedies granted via the Louisiana Workmen's Compensation Act to an injured employee are exclusive of all other rights and remedies (e.g. suits in tort) "... against his employer, or any principal or any officer, director, stockholder, partner, or employee of such employer or principal...". However, the aforesaid statute does not provide for the particular factual situation presently before this court. In the instant case, a regular employee of defendant Alexander's principal (also, plaintiff's employer) is suing his employer's statutory employee and such statutory employee's general employer and its liability insurer. The language of LSA-R.S. 23:1032 provides for the more common situation where the statutory employee is injured on the job while in the employ of his special employer by providing that the injured statutory employee can sue neither his statutory employer nor the regular employees of his statutory employer in tort. For example, in the instant case, Vincent is the regular employer of Johnson and the principal of Alexander. Clearly, if Alexander had been hurt he could not bring a tort suit against Johnson because under Section 1032 the rights and remedies granted under the Workmen's Compensation Act are exclusive of all other rights and remedies against an "employee of his employer or principal." However, the aforesaid statute is silent in regard to the right of a regular employee of a principal to sue the principal's statutory employees in tort. Although as far as we have been able to determine, this particular issue is res novo, in our view it would be incongruous to hold that the provisions of LSA-R.S. 23:1032 would bar suits in tort by a statutory employee against the regular employees of the principal but would not bar suits in tort by the regular employees of the principal against statutory employees of the principal. Thus, we conclude that when an employee acquires the status of a statutory employee by application of the provisions of LSA-R.S. 23:1061, he becomes a co-employee vis-a-vis the regular employees of the principal within the intendment of Section 1032. Therefore, we determine that since Alexander was a statutory employee of plaintiff's employer, Vincent, he, thus, became a co-employee of Johnson. Since, the explicit language of LSA-R.S. 23:1032 prohibits suits in tort as between co-employees, we conclude that the plaintiff may not maintain the instant suit against Alexander.
Having concluded that plaintiff may not maintain this suit against his co-employee, Alexander, the issue now becomes whether or not Dupont and its liability insurer are responsible by virtue of the doctrine of respondeat superior for the torts of Dupont's regular employee even though such employee was at the time of the tort a statutory employee of plaintiff's employer and a co-employee of the injured plaintiff.
*1386 This very issue, albeit within a different factual context, was considered by our brethren of the Second Circuit in the recent case of Franklin v. Haughton Timber Co., 377 So.2d 400 (La.App. 2nd Cir. 1979), writ denied, 380 So.2d 624 (La.1980). The facts in Franklin are as follows: Keith Hoffee was engaged in the business of producing pulpwood from a certain tract of land. His sole employee was Donald Holm. Holm's duties consisted of cutting and stacking pulpwood, driving the pulpwood truck to the market and doing whatever else he was instructed to do by Hoffee. Hoffee planned to be absent from the business for a week and, in response to requests by Holm, agreed to permit Holm to continue to work in Hoffee's absence. Holm, without authorization from Hoffee, employed plaintiffs' decedent, Mark Franklin, to assist him in his work. During the course of such work, plaintiffs' decedent was electrocuted. The decedent's parents filed a wrongful death action against Holm's employer, Hoffee, and his liability insurer, for damages alleging that Hoffee as employer of Holm was responsible for the negligence of Holm and was vicariously liable to them for the damages they sustained by virtue of Holm's negligence. In rejecting the plaintiffs' demands the court reasoned as follows:
"An employee who employs another on his master's behalf without his master's expressed or implied authority does not create a relationship of employer-employee between his helper and his employer in absence of ratification by the employer of the employment agreement at a subsequent time. Gentry v. Peterson, 19 So.2d 623 (La.App. 2d Cir. 1944); Harris v. Sun Indemnity Co. of N. Y., 28 So.2d 403 (Ct. of App. Orleans 1946); Porter v. La. Grocers Co-operative, Inc., 233 So.2d 709 (La. App. 4th Cir. 1970). Mark who was employed by Holm without the knowledge or authorization of Hoffee, did not become Hoffee's casual employee. Holm testified he had agreed to pay decedent, though the specific amount of his compensation had not been determined. Holm had enlisted decedent's assistance and had engaged Mark to help him measure the wood to be cut. Therefore, he had power of control over Mark's action while on the job and the power to dismiss Mark. Under these circumstances Mark, having worked throughout the day and having assisted in the production and hauling of approximately four cords or a truckload of pulpwood for compensation which he was to receive from Holm, became Holm's employee. Carter v. Lanzetta, 249 La. 1098, 193 So.2d 259 (1966). He was not the employee of Hoffee who was totally unaware of Mark's participation in the pulpwood operation until after his death. Porter v. La. Grocers Co-operative, Inc., supra. Because the employer-employee relationship existed between Mark and Holm, plaintiffs' exclusive remedy against Holm lies in the workmen's compensation statute under the provisions of LSA-R.S. 23:1032.
The only negligence which brought about the electrocution of decedent was Holm's failure to secure the boom in its proper and lower position upon the loaded Pack-a-Back. His failure to lower the boom to a height of less than 18-feet was the reason why the boom became engaged in the electric transmission lines. The absent Hoffee had no part in the negligence of Holm in attempting to travel under the line with the boom in a raised position to a height above 18-feet. Under these circumstances the plaintiffs do not assert that Hoffee was guilty of any personal fault in connection with decedent's death. Plaintiffs' sole contention concerning Hoffee's liability is that he is vicariously responsible for the negligent conduct of his employee Holm.
In Louisiana the liability of a servant for damages under LSA-C.C. Art. 2315 for the wrongful death of another caused through his negligence is primary. The master's liability imposed by LSA-C.C. Art. 2320 in favor of third persons for the damages occasioned by his servant's negligence rests solely on the principle of respondeat superior and is derivative or secondary in all cases where the master himself is not at fault. Williams v. Marionneaux, 240 La. 713, 124 So.2d 919 (1960); Caldwell v. Montgomery Ward & *1387 Co., Inc., 271 So.2d 363 (La.App. 2d Cir. 1972).
In Marionneaux, supra, the court described the master's liability as follows:
"In Louisiana, the liability of the servant for damages under Article 2315 of the Civil Code for injuries to another caused through his negligence is primary. Conversely, the liability imposed on the master by Article 2320 of the Code in favor of third persons for the damages occasioned by his servant's negligence, while exercising the functions in which the servant is employed, rests solely on the principle of respondeat superior and is derivative or secondary in all cases where the master himself is not at fault." Id. 124 So.2d at 922.
The court while discussing the plaintiff's release of the servant containing a reservation of the claim against the master stressed plaintiff had but one cause of action against the servant and the master. The court stated:

"There was but one cause of action which the law gave plaintiff in recompense for his injuries. That cause of action sounded exclusively in tort under Article 2315 of the Civil Code. Under Article 2320 this same cause of action for Blanchard's alleged tort was assertable against Marionneaux but it was cognizable only because Blanchard was allegedly acting in his function as an employee of Marionneaux at the time Blanchard committed the negligencet [sic] act causing plaintiff's injury." Id. 124 So.2d at 923 (emphasis supplied)
See also Thomas v. Clarklift and Reliance Ins. Co., 375 So.2d 375 (La.1979) where the supreme court made the following statement with regard to the liability of a master for the negligent acts of his servant:
"It is true, of course, as held in Caldwell, that a master's liability with respect to his employee's negligence is secondary or vicarious, and that the employer is not a joint tortfeasor with its employee."
Hoffee, the master here, cannot be vicariously liable for the negligence of his servant Holm because Holm is not primarily liable under LSA-C.C. Art. 2315 for the tort he committed. LSA-R.S. 23:10321 removed Holm's primary tort liability by making Holm liable exclusively in workmen's compensation for any injuries caused to his employee. The tort remedy of Article 2315 is eliminated by the workmen's compensation remedy.
This provision has been construed to eliminate the Civil Code Article 2315 cause of action against an employer whose negligent acts brings about the injury or death of an employee. Colorado v. Johnson Iron Works, 146 La. 68, 83 So. 381 (La.1919); Atchison v. May, 201 La. 1003, 10 So.2d 785 (1942); Hawkins v. Employers Casualty Company, 177 So.2d 613 (La.App. 3d Cir. 1965); Cripe v. Haynes, 350 So.2d 956 (La.App. 2d Cir. 1977).
The court in Atchison, supra, in discussing the workmen's compensation cause of action against the employer whose negligence brought about the death of plaintiff's brother quoted from the earlier Colorado v. Johnson, supra:

"... Said act, by its plain and express terms, does make the remedy which it provides exclusive in a case like the present; it therefore does apply to this case, and does supersede article 2315 of the Code ... First, because formerly the right to sue for the death of a human being, which is the right plaintiff is seeking to exercise did not exist in this state, but was given by statute, and, of course, the Legislature may repeal a statute enacted by itself, or supersede it by another statute; second, because the regulation of what recourse one person may have against another for personal injury is a matter entirely within legislative discretion." Id. 10 So.2d at 787
The court further stated:
"The mere fact that it so happens that the deceased employee in this case left no dependents cannot have the effect of providing a right of action in the *1388 plaintiffs under Article 2315 of the Civil Code, when that right had been superseded and abated by the provisions of the Employer's Liability Act." Id. at 789
In the decision of Cripe, supra, this court recognizes that the compensation act in providing that remedies therein are exclusive against the employer created a substantive change in the law and eliminated the tort cause of action against a negligent employer:
"The injured employee has no cause of action against the employer for the damages caused by the employer's fault." Id. 350 So.2d at 961
The Civil Code 2315 cause of action against a negligent employer by an injured employee or his dependents is totally eliminated by the Louisiana Workmen's Compensation law which provides in lieu thereof designated specific benefits to the injured employee or his dependents.
The cited jurisprudence construing LSA-R.S. 23:1032 requires the conclusion that plaintiffs have no cause of action against Holm and the jurisprudence construing the master's liability requires there to be primary legal responsibility in the servant before the master becomes secondarily liable. Under these circumstances Hoffee cannot be vicariously liable for the death of Mark due to the negligence of Holm."
As noted, the Louisiana Supreme Court denied writs in the Franklin case and, although a writ denial is not controlling, it is persuasive in that the principal issue on appeal in Franklin concerned the vicarious liability of the tortfeasor's employer.
We agree with the holding in the Franklin case considering same to be logical and reasonable and one which reaches a just result in keeping with the legislative purpose and intent of the Workmen's Compensation Act. Accordingly, we conclude that since Alexander, a co-employee of Johnson is not primarily liable in tort to Johnson by reason of the co-employee exemption set forth in LSA-R.S. 23:1032, Alexander's general employer and its insurer cannot be held secondarily liable.
We recognize that the conclusion which we reach in this case is seemingly in conflict with the La. Supreme Court decision in LeJeune v. Allstate Insurance Company, 365 So.2d 471 (La.1978).[6] The factual circumstances of the instant case are extremely similar to those present in LeJeune. In the LeJeune case, plaintiff's decedent was a regular employee of Ardoin's Funeral Home of Mamou, Inc. (Mamou). He was killed as a result of the negligence of the defendant, LaFleur, a regular employee of Ardoin's Funeral Home of Ville Platte, Inc. (Ville Platte), who had been borrowed by Mamou. Decedent's survivors sought tort recovery from the insurer of the general employer, Ville Platte, under the doctrine of "Respondeat Superior."[7] In LeJeune, the Court concluded that Ville Platte, the general employer, was liable for damages caused to a third person (LeJeune) as a result of the loaned employee's negligence.
In LeJeune, the court expressly held that both a general and a special employer may be held liable to third persons for the employee's torts. Justice Tate in LeJeune noted that the determination that an employee tortfeasor is a borrowed employee "... should not relieve the general employer of his liability for his employee's negligent acts done in the pursuance of duties designated for him by his employer, in whose pay he continued, and who had the sole right to discharge him."
We conclude that it is consistent to apply the LeJeune rationale to cases involving a statutory employer-employee relationship. That is to say, as to third persons injured by an employee's torts both the statutory employer and the general employer *1389 are responsible. However, in our view, for the reasons heretofore stated, plaintiff cannot be considered a "third person" entitled to delictual recovery from Vincent, Alexander or Dupont.
Although in LeJeune plaintiffs' decedent, under similar factual circumstances, was allowed recovery as a "third person," the court reached this result without considering Ville Platte's immunity from suit under R.S. 23:1032, by reason of the co-employee relationship which existed between the decedent in LeJeune and the tortfeasor. This issue was not raised nor considered.[8] Under the circumstances we do not consider LeJeune, although factually similar, to be dispositive of the issues presented in this case.
Having concluded that the trial court judgment on the issue of liability must be reversed and plaintiff's suit as against all defendants dismissed, we need not consider those issues pertaining to the contributory negligence and/or assumption of the risk of plaintiff or the issue of quantum of damages.
For the above and foregoing reasons, the judgment of the trial court is reversed and it is now ordered, adjudged, and decreed that plaintiff's suit against defendants, James A. Alexander, Dupont and Alexander Equipment Corporation and its liability insurer, Western World Insurance, be dismissed with prejudice. It is further ordered that the intervention of United States Fidelity and Guaranty Company be dismissed with prejudice.
It is further ordered that all costs of these proceedings both at the trial level and on appeal be born one-half (½) by United States Fidelity and Guaranty Company and one-half (½) by plaintiff, Willie W. Johnson.
REVERSED AND RENDERED.
NOTES
[1] LSA-R.S. 23:1103 provides:

"In the event that the employer or the employee or his dependent becomes party plaintiff in a suit against a third person, as provided in R.S. 23:1102, and damages are recovered, such damages shall be so apportioned in the judgment that the claim of the employer for the compensation actually paid shall take precedence over that of the injured employee or his dependent; and if the damages are not sufficient or are sufficient only to reimburse the employer for the compensation which he has actually paid, such damages shall be assessed solely in his favor; but if the damages are more than sufficient to so reimburse the employer, the excess shall be assessed in favor of the injured employee or his dependent, and upon payment thereof to the employee or his dependent, the liability of the employer for compensation shall cease for such part of the compensation due, computed at six per cent per annum, and shall be satisfied by such payment.
No compromise with such third person by either the employer or the injured employee or his dependent shall be binding upon or affect the rights of the others unless assented to by him."
[2] The record reveals that Dupont and Alexander Equipment Corporation is owned by two stockholders, one of whom is the defendant, James Alexander. Alexander was also serving as President of the aforesaid corporation on February 22, 1978.
[3] The choker employed at the time of plaintiff's accident was described as a piece of belting approximately 12-14 inches wide and approximately six feet in length with two metal eyes at each end, one eye being smaller than the other so as to fit through the larger eye.
[4] LSA-R.S. 23:1032 provides:

"The rights and remedies herein granted to an employee or his dependent on account of an injury, or compensable sickness or disease for which he is entitled to compensation under this Chapter, shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations, against his employer, or any principal or any officer, director, stockholder, partner or employee of such employer or principal, for said injury, or compensable sickness or disease. For purposes of this Section, the word "principal" shall be defined as any person who undertakes to execute any work which is a part of his trade, business or occupation in which he was engaged at the time of the injury, or which he had contracted to perform and contracts with any person for the execution thereof.
Nothing in this Chapter shall affect the liability of the employer, or any officer, director, stockholder, partner or employee of such employer or principal to a fine or penalty under any other statute or the liability, civil or criminal, resulting from an intentional act.
The immunity from civil liability provided by this Section shall not extend to: 1) any officer, director, stockholder, partner or employee of such employer or principal who is not engaged at the time of the injury in the normal course and scope of his employment; and 2) to the liability of any partner in a partnership which has been formed for the purpose of evading any of the provisions of this Section."
[5] LSA-R.S. 23:1061 provides:

Where any person (in this section referred to as principal) undertakes to execute any work, which is a part of his trade, business or occupation or which he had contracted to perform, and contracts with any person (in this section referred to as contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed.
Where the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor."
[6] In LeJeune, the Court considered the issue of delictual responsibility of a general employer for the negligence of the general employer's regular employee which caused injury to a regular employee of the special employer within the "borrowed servant" context.
[7] In LeJeune, plaintiffs did not bring suit against LaFleur or Ville Platte. Rather, plaintiffs sued only Insurance Company of North America, Ville Platte's insurer.
[8] The LeJeune court only considered the effect of the "fellow employee" relationship between LeJeune and LaFleur under a "fellow employee" exclusion clause contained in INA's policy concluding that "... a `borrowed employee' is not necessarily to be defined as a `fellow employee' for purposes of an exclusion clause, given the usual construction of language in insurance policies."