# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 93-CC-00143-SCT

### *MISSISSIPPI EMPLOYMENT SECURITY COMMISSION AND OCEAN SPRINGS SCHOOL DISTRICT*

### *v.*

### *JAMES F. HARRIS*

| | |
|---|---|
| DATE OF JUDGMENT: | 1/7/93 |
| TRIAL JUDGE: | HON. KATHY KING JACKSON |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | FRED J. LOTTERHOS |
| ATTORNEY FOR APPELLEE: | ROBERT P. KREBS |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND RENDERED - 4/4/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 4/25/96 |

**BEFORE PRATHER, P.J., PITTMAN AND SMITH, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

**¶1.** This is an appeal from a decision of the Circuit Court of Jackson County which reversed a decision of the Referee of the Mississippi Employment Security Commission and the Commission's Board of Review. The Referee and Commission's Board of Review disqualified a school teacher, James F. Harris, from receiving unemployment benefits on the grounds of misconduct, citing to Miss. Code Ann. § 71-5-513 (Rev. 1995). The alleged misconduct, for which Harris was fired, was that Harris' showing of an "R" rated movie, *Silence of the Lambs*, to his students, some of whom were under the age of 17. While the school did not have a written policy regarding films, Harris had previously been cautioned that any movie shown needed to relate to the class subject matter. The circuit court judge reversed the Commission and awarded unemployment benefits to Harris. The Commission appealed the circuit court's decision to this Court.

## STATEMENT OF THE FACTS

¶2. On November 19, 1991, James F. Harris, a teacher at Ocean Springs High School, showed the first part of the "R" rated movie *Silence of the Lambs* to students in his class, some of whom were under the age of 17. After some complaints from parents, the principal, Billy Hubbard, requested that Harris not show the remainder of the film as he had planned to do during the next class period. Harris complied with that request. However, after verbal notification, Harris received a letter on November 21, 1991, from the

superintendent, Dr. Herring, asking for his resignation. The letter stated that Harris's action was "unprofessional" and that he used "incompetent judgment" in showing such a movie. Harris resigned and then later withdrew his resignation on December 9, 1991. He was then discharged, effective December 20, 1991.

¶3. At the Mississippi Employment Security Commission hearing, the principal, Hubbard, related that a parent had called the school in September 1991 questioning the wisdom and benefit of Harris showing to his anatomy class a movie that pertained to the control of alligators. Hubbard cautioned Harris at that time to be sure that any films shown related to his subject matter. Hubbard stated that there was no written policy regarding the showing of "R" rated films, but that he felt like a teacher, as a professional person, would utilize classroom time to teach the subject matter. He said that in interviewing prospective teachers and during the orientation process, he tried to impress upon the teachers the need to spend "one hundred percent time on tasks," another way of expressing that the teacher should spend all his or her classroom time on the subject that the teacher is teaching.

¶4. Harris, a teacher for thirteen years, but in his first year with this school, stated that the movie was a reward for students because the students had worked hard and needed a break. The classes eligible for this reward voted on *Silence of the Lambs*, which was an "R" rated movie. A student supplied the movie and the classes watched the first forty-five minutes of it. He said that he did not preview the movie, that he had noticed the "R" rating on the movie cover, continued to show the movie, and did not see any violence in the part that the classes watched.[1]

¶5. When Harris applied for unemployment benefits, he was denied such benefits by the Referee of the Mississippi Employment Security Commission pursuant to Miss. Code Ann. § 71-5-513(A)(1)(b)(Rev. 1995). This code section provides that an individual shall be disqualified from benefits for the week or fraction thereof which immediately follows the day on which he was discharged for misconduct connected with the work, if so found by the Commission, and for each week thereafter until he has earned remuneration for personal services equal to not less that eight times his weekly benefit amount as determined in each case. Upon appeal, the Commission subsequently affirmed the Referee's decision. The Jackson County Circuit Court judge reversed the Commission and Referee, holding that conduct complained of by the Ocean Springs School District did not constitute "misconduct" as set out in Miss. Code Ann. § 71-5-513(A)(1)(b) and the case law interpreting said statute.

## STANDARD OF REVIEW

¶6. The scope of review of the findings of an administrative agency is well established. The reviewing court will entertain the appeal to determine whether or not the order of the administrative agency 1) was unsupported by substantial evidence, 2) was arbitrary or capricious, 3) was beyond the power of the administrative agency to make, or 4) violated some statutory or constitutional right of the complaining party. These are the only grounds for overturning an agency action; otherwise the agency's determination must remain undisturbed. *Mississippi Comm'n on Envtl. Quality v. Chickasaw County Bd. of Supervisors*, 621 So. 2d 1211, 1215 (Miss. 1993).

## LAW AND ANALYSIS

### WHETHER OR NOT THERE WAS SUBSTANTIAL CREDIBLE CLEAR AND

**CONVINCING EVIDENCE TO SUPPORT THE REFEREE'S AND COMMISSION FINDING THAT HARRIS WAS GUILTY OF "MISCONDUCT" AS REFERRED TO IN MISS. CODE ANN. § 71-5-513.**

¶7. Parents and society as a whole entrust teachers with a tremendous responsibility; that responsibility is the training of children's minds. Harris states that the Ocean Springs School System does not have a policy on showing "R" rated films. Policies serve as guidelines for teachers and cannot generally be all-encompassing, or else the manual for teaching at a certain school would fill the school library. No, school administrators and parents rely on teachers possessing something else. That something else is common sense. Anyone born in this century and living on this planet should know the "R" movie rule, which is "no one under 17 admitted unless a parent accompanies them into the movie."[2] This rule means parents must give permission for their children to view an "R" rated film. It may be too much to infer, but common sense suggests that this guideline may potentially apply to places other than movie theaters, such as schools, and perhaps it would be a good idea to check this out before showing a notoriously violent film to students under the age of 17.

¶8. However, we must determine if there was substantial evidence to support the Referee's finding of misconduct. This Court has defined misconduct in the context of unemployment law as

> conduct evincing willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee. Also, carelessness and negligence of such a degree, or recurrence thereof, as to manifest culpability, wrongful intent or evil design. . . . Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity or inadvertances and ordinary negligence in isolated incidents, and good faith errors in judgment or discretion were not considered "misconduct" within the meaning of the statute.

*Wheeler v. Arriola*, 408 So. 2d 1381, 1383 (Miss. 1982)(quoting *Boynton Cab Co. v. Neubeck*, 296 N.W. 636 (Wis. 1941)). In *Wheeler,* the bookkeeper was fired because she made errors in the bookkeeping procedures. *Id.* at 1383. The Board of Review of the Mississippi Employment Security Commission granted unemployment benefits to her, finding no evidence of any willful failure to follow instructions or that the bookkeeping errors were due to any intentional neglect or that there was any misappropriation of funds by her. *Id.* at 1384. The Board of Review stated that the employer had the "right to discharge the claimant if he was dissatisfied with her work performance, but that the evidence did not substantiate a finding against appellant of misconduct connected with her work." *Id.* The circuit court judge reversed the Board of Review. On appeal, this Court concluded that the finding of the Board of Review was supported by law and reversed the lower court's rejection of the Board's finding. *Id.*

¶9. In the case at bar, Harris was fired because the administrators felt that his showing of *Silence of the Lambs* to students under the age of 17 demonstrated a lack of good judgment, a quality that they felt was necessary for a teacher to possess in order to be entrusted to teach these students. As in *Wheeler*, the administrator had a right to discharge Harris if he was dissatisfied with his work performance. In this case, however, Harris willfully disregarded his employer's admonition that the film must relate to the subject matter. This admonition also applied to a movie shown as a "reward" for students who had worked hard.

¶10. The Commission takes the position that this is a *Wheeler* scenario, in that the definition of misconduct applies to Harris. It argues that the issue is whether a public high school has the right to make decisions

about what conduct is and is not acceptable by its teachers. However, this is not the "nuts and bolts" issue. A public high school *does* have the right to make decisions about what conduct is and is not acceptable by its teachers. A ruling here reinstating benefits is not a comment on that right, but rather a determination as to whether the situation meets the *Wheeler* criteria in the unemployment benefits context and rises to the level of the "misconduct" envisioned by Miss. Code Ann. § 71-5-513 and its subsequent case law interpretation.

¶11. The Commission, in its appeal, focuses on what it refers to as Harris's disregard of a September warning from Hubbard not to show any movies without office approval and not to show any movies unrelated to courses that he taught. Harris had allowed his anatomy and physiology students to view a film about the control of alligators. A parent had questioned the applicability of this film to the subject matter. The lack of a justifiable relation between the film and the subject matter aroused Hubbard's concern and prompted his warning in September. Hubbard's testimony regarding this warning to Harris was "the main thing to remember in the future is let's be sure that the sort of movie that we show pertains to the subject." Harris counters saying that he was not told that he could not show a movie at all, that he did this as a reward for the students, and that to be democratic, he let them chose the movie. This resulted in the showing of *Silence of the Lambs* to students who, if they attempted to view the movie in a theater, would have been deemed too young.

## CONCLUSION

¶12. This Court must examine Harris's conduct in the unemployment benefits context. We now review whether Harris's behavior falls under the "error[] in judgment or discretion" language that is not "considered 'misconduct' within the meaning of the statute" or whether Harris willfully disregarded his employer's interests and cautionary warnings. *Wheeler*, 408 So. 2d at 1383. A rebuttable presumption exists in favor of the administrative agency and the challenging party has the burden of proving otherwise. *Sprouse v. Mississippi Employment Security Comm'n,* 639 So. 2d 901, 902 (Miss. 1994). This Court must not reweigh the facts of the case or insert its judgment for that of the agency. *Id.* at 902; *Mississippi Public Service Comm'n v. Merchants Truck Line, Inc.* 598 So. 2d 778, 782 (Miss. 1992).

¶13. Harris admitted that Hubbard had told him that in the future, films should relate to the subject matter. Harris intentionally disregarded that statement. He then stated at the hearing that he believed the film related to his subject, yet, he also stated that he had not previewed the movie in order to make such a determination. He could not have known whether the movie related to his subject matter as requested by his employer, except as an after-the-fact assertion. Substantial evidence exists to uphold the Referee's finding that Harris's behavior constituted "misconduct" within the meaning of Miss. Code Ann. § 71-5-513. We reverse the circuit court judge's holding awarding unemployment benefits.

¶14. REVERSED AND RENDERED.

LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, BANKS, ROBERTS AND MILLS, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION.

**McRAE, JUSTICE, DISSENTING:**

¶15. Because Harris' showing of the film, *Silence of the Lambs,* does not rise to the level of "misconduct" as contemplated by Miss. Code Ann. § 71-5-513 (A)(1)(b) and the case law interpreting the statute, the circuit court correctly found that Harris was entitled to unemployment benefits. His conduct was neither wilful nor indicative of either a wrongful intent or evil design so as to warrant the denial of benefits. Accordingly, I dissent from the majority's decision to reverse the circuit court and reinstate the Employment Security Commission's decision.

¶16. Harris' decision to show the "R" rated movie requested by his students, some of whom were under the age of seventeen, evinces poor judgment, or perhaps, ordinary negligence.[3] The burden is on the employer to show by "substantial, clear, and convincing evidence" that the former employee's conduct warrants disqualification from eligibility for benefits. *Foster v. Mississippi Employment Security Comm'n*, 632 So. 2d 926, 927 (Miss. 1994); *Westbrook v. Greenville Council of Aging,* 599 So. 2d 948, 949 (Miss. 1992)*; Mississippi Employment Security Comm'n v. Flanagan*, 585 So. 2d 783, 785 (Miss. 1991). The Ocean Springs School Board has failed to show that Harris' conduct was "wilful and wanton" or of such a degree "as to manifest culpability, wrongful intent or evil design . . ." *See Wheeler v. Arriola,* 406 So. 2d 1381, 1383 (Miss. 1982). At best, the Board, which characterized Harris' actions as not using good judgment, has shown merely an isolated incident of ordinary negligence or a good faith error in judgment or discretion, neither of which warrant a finding of misconduct by the Commission. *Wheeler,* 406 So. 2d at 1383. Thus, the Commission's findings were not supported by substantial evidence and its decision properly was reversed by the circuit court.

1. Harris states that he did not think *Silence of the Lambs* had any sexual innuendos or orientation and that he found the first part of the film that he showed to the class to be "respectful." He maintained this opinion even when questioned about the strong innuendo's in the film's first few minutes that a man is masturbating. Harris also stated that the film related to anatomy and physiology, which was the subject he was teaching.

2. Exact message courtesy of Parkway Place Theater. Harris flatly stated in his testimony that he "never considered" getting parental consent and that he "did not know to this day that it ["R" rated movie] does [require parental consent]."

3. We note that the "R" movie rating requires that a child under the age of seventeen be accompanied by a parent. At school, the teacher stands in loco parentis.