GUIDRY, Judge.
This tort suit was before us previously. Willie W. Johnson filed this action against James A. Alexander for damages sustained when a steel pipe being lifted by Alexander, a backhoe operator, fell and struck plaintiff’s forefoot causing extensive injuries. Also named as defendants are Dupont and Alexander Equipment Corporation (hereafter Dupont and Alexander), Alexander’s employer, and Western World Insurance Company (hereafter Western), Dupont and Alexander’s liability insurer. United States Fidelity and Guaranty Company (hereafter U.S.F. & G.), the worker’s compensation insurer of Johnson’s employer, Vincent Construction Company, Inc. (hereafter Vincent), intervened praying for reimbursement for medical expenses and worker’s compensation benefits paid to Johnson as a result of his work-related injuries.
The trial court held in favor of plaintiff granting judgment against all defendants in solido, in the sum of $102,479.06 with interest until paid and ordered that interve-nor, U.S.F. & G. be paid for its expenditures. On appeal, we found that the evidence supported the conclusions of the trial court that Alexander was negligent in the operation of the backhoe and that Alexander was not a borrowed employee of Vincent. However, we found that Alexander was a statutory employee of Vincent and concluded that, as such, he was a co-employee of Johnson and, therefore, his exclusive remedy was in worker’s compensation. Accordingly, we reversed the trial court’s judgment and dismissed the plaintiff’s suit with prejudice. Johnson v. Alexander, 406 So.2d 1378 (La.App. 3rd Cir.1981). In rendering judgment as aforestated, we preter-mitted any consideration of the issues concerning contributory negligence, assumption of the risk and quantum.
The Louisiana Supreme Court granted writs, 412 So.2d 88 (La.1982), and ultimately reversed our holding, stating in pertinent part:
“Further, though workmen’s compensation benefits are a statutory employee’s exclusive remedy when injured by employees of the principal, there is no provision in our workmen’s compensation act which grants immunity from suit to a ‘statutory co-employee’ who injures the principal’s employee during the course and scope of employment. Absent a statutory provision to the contrary, the employees of the subcontractor must be considered third persons as far as the employees of the principal are concerned and subject to proceedings in tort. Benoit v. Hunt Tool Co., 53 So.2d 137 (La.1958); Malone & Johnson, supra, Sec. 368 in 14 Louisiana Civil Law Treatise.4 Because the subcontractor may be liable for injuries sustained by an employee of the principal, the subcontractor’s liability carrier, as a solidary obligor, is also liable for plaintiff’s injuries. Ewing v. Sanson, 394 So.2d 849 (La.App. 3rd Cir.1981), writ dismissed 398 So.2d 532; Pearson v. Hart *1271 ford Accident & Indemnity Co., 281 So.2d 724 (La.1973). Consequently, plaintiff was not precluded from bringing suit against Alexander, Dupont and Alexander Equipment, and Western World Insurance Company.” (footnote omitted). Johnson v. Alexander, 419 So2d 451 (La.).
This case is now before us on remand with instructions to address the remaining issues. Those issues are:
(1) Was plaintiff contributorily negligent so as to bar his recovery?
(2) Did plaintiff knowingly assume the risk of harm presented by moving the pipe with the backhoe?
(3) Is the award of damages excessive?
CONTRIBUTORY NEGLIGENCE
When this case was first before us, we found no manifest error on the part of the trial court in its conclusion that defendant, Alexander, was negligent and that his negligence was the legal cause of the accident. The trial court concluded that Alexander was negligent, in that he raised the backhoe bucket to such a height that the choker slipped off of the teeth of the bucket, causing the pipe to strike the plaintiff.
Defendants argue that Johnson was also guilty of negligence in the following particulars: failing to place the buckle properly on the teeth of the backhoe; improperly signaling Alexander to begin lifting the pipe; and, using a pipe choke which was unsafe.
There is no evidence in the record to indicate that the buckle was improperly placed or that the signal was improperly given. There was nothing in the initial lifting to suggest any danger. According to Alexander, the pipe remained level and the lift was smooth. The record indicates that the pipe choke used was not the safest method possible but the operation could have been done safely had the pipe not been lifted too high. Furthermore, Johnson, a pipefitter, is not responsible for the method used in moving the pipe. Although he had worked around backhoes all of his life, he never operated one and his knowledge of the operation of backhoes was far inferior to that of the operator, Alexander. The record supports the trial court’s conclusion that contributory negligence was not proved.
ASSUMPTION OF THE RISK
With respect to appellant’s argument that plaintiff assumed the risk of injury, this is a subjective test and its application rests solely on the state of mind and knowledge of Johnson. In Prestenback v. Sentry Insurance Company, 340 So2d 1331 (La.1976), the Supreme Court discussed the knowledge element of the defense:
“As we stated in Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1971), “the determination of whether a plaintiff has assumed a risk is made by subjective inquiry .... ” See also McInnis v. Firemen’s Fund Ins. Co., 322 So.2d 155 (La.1975); Prosser on Torts, pp. 447-450 (4th ed., 1971).
In order for a plaintiff to assume a risk, he must knowingly and voluntarily encounter the risk which causes his injury. McInnis v. Firemen’s Fund Ins. Co., cited above. “Knowledge” is the mainstay of this defense, and it must be proved by a preponderance of the evidence.
Recovery is denied if the plaintiff knew or should have known of the risk involved. The defendant argues, and the court of appeal also held, that Presten-bach should have known of the driver’s condition, simply since he had spent most of the evening with him.
However, for purposes of a knowing assumption of risk, we impute knowledge to a plaintiff, not because he was in a position to make certain observations, but only when he actually makes those observations and, from them, should reasonably have known that a risk was involved.”
The risk of harm to Johnson was that Alexander, an expert backhoe operator, would lift the boom to a point where the eye of the sling would slip off the teeth of the backhoe, causing the pipe to fall and *1272 strike Johnson. As aforestated, Johnson had no particular knowledge of the operation of backhoes. His function was to steady the pipe and signal the operator, whose expertise he had a right to rely on. The record supports the trial court’s conclusion that assumption of the risk was not proved.
INJURIES AND AWARD
The crux of the defendant’s argument on quantum is that the trial judge erred in concluding that the plaintiff has established that the accident caused the aggravation of a preexisting condition. The trial judge’s thorough analysis of the evidence presented on this issue supports his conclusion. In disposing of this issue, we are pleased to adopt, as our own, the trial court’s cogent reasons which read as follows:

“Plaintiff’s great toe of the right foot was mashed and most of it had to be amputated. He also had compound fractures of the second and third toes. He will have a permanent partial disability loss of use of the right foot directly attributable to the toe injuries variously estimated at from 15 percent to 17 percent.

Plaintiff contends, however, that the final effect of the accident is more serious than just the effect of the injury to three toes. He contends that an arthritic condition resulting from an old ankle injury in 1964 was aggravated by the gait and weight bearing changes brought on by the amputation of the great toe and the ununited fracture of the next two, and that these conditions together render him crippled and permanently disabled.

The medical testimony was presented to the court by way of depositions of three physicians. From these depositions the court has put together the medical history of the right foot as follows.

Plaintiff suffered an ankle injury in 1964. He was treated by Dr. George P. Schneider, a Lake Charles orthopedist. This doctor was not asked at his deposition to supply much detail about the old injury; he testified only as to one specific notation in his clinic records, a notation dated January 29, 1969, and which reflected that the patient was then having increasing degenerative proliferative change about the ankle joint and that he was discharged at that time with a 35 percent disability of the right ankle joint. A more detailed history of the 1964 injury and treatment can be found in the deposition of Dr. Jerome A. Ambrister, a Lake Charles orthopedist who saw plaintiff on November 30, 1965, for evaluation purposes only. From this doctor’s old medical report it is learned that plaintiff injured his right ankle on August 20, 1964, suffering a fracture of the fibula. Although Dr. Ambrister's recounting of his old report in the deposition goes into detail regarding the injury, Dr. Schneider’s treatment, and his own findings on examination and x-rays, Dr. Ambrister says little about the opinion he rendered back then other than the observation that one could expect some degenerative arthritis in the ankle.

Thus, concerning the old injury, the medical evidence in summary reveals plaintiff had a fracture of the right fibula in 1964 from which arthritis of the ankle joint could be expected and arthritic changes were present in 1969.

Moving now to the accident of February 22, 1978, when the pipe fell on his right foot plaintiff again saw Drs. Ambrister and Schneider, only at this time the roles of these two doctors were reversed: Am-brister was the treating physician and Dr. Schneider saw him for evaluation. Dr. Ambrister hospitalized plaintiff between February 22,1980, and February 27, 1980 for the amputation. He was seen three times afterwards by the treating physician, the last time in early July, 1980, when Dr. Ambrister prescribed a below knee brace. This doctor assigned a 17 percent permanent partial disability to the right foot as a result of the toe injuries. He stated the patient was also complaining of a severe ankle pain but this he ascribed to the old arthritic ankle and not the new injury. This doctor stated, however, that if it were true that plaintiff had more pain in the ankle following the 
*1273
1978 accident than he did previous to it ‘I don't know of any other explanation than the accident to have brought about through some means some increases in the discomfort.’

On November 1, 1979, Dr. Schneider saw plaintiff for evaluation. He stated in his deposition that plaintiff then told him that he was no longer suffering pain from the injury to his toes but that his ankle bothered him. Finding no history of or clinical indication of any additional injury to the previously damaged right ankle, Dr. Schneider opined that the ankle problem was associated with the degenerative changes resulting from his previous injury and not from the more recent injury. The more recent injury, however, resulted by itself in a permanent partial disability of 15 percent of the function of the right foot.

The opinions of both of these doctors that the new injury and the ankle pain are unrelated appears to be based on the fact that when the pipe fell there was no direct injury to the ankle, only to the toes. These doctors were not questioned about nor did they appear to consider the indirect relationship between the toe injuries and enhancement of a dormant ankle problem.

This relationship was considered by the third doctor whose deposition testimony the court has studied, that of Dr. Richard S. Materson of Houston.

Dr. Materson practices the specialty of physical medicine and rehabilitation and has impressive credentials. He saw the patient three times, February 21, 1980, August 12, 1980, and October 8, 1980. His deposition was taken in April, 1980, after the first visit, but his reports of the latter two visits are in evidence to supplement the deposition. He took a thorough history and physically examined plaintiff, and in addition, conducted an electromyo-graphic examination and took x rays (sic). His clinical impression was that plaintiff had an amputation of part of the right great toe, ununited fractures of the mid-portion of the next two toes, and a significant arthritis of the ankle joint of the right foot.

It was Dr. Materson's opinion that the ankle symptoms were enhanced by the amputation of the right great toe, whether or not there was direct injury to the ankle. This is because the gait pattern of the great toe along with the fractures of the second and third toes is dramatically changed from normal. The result is a dramatic change in the weight bearing relationship between the ankle joint and the hind foot, which causes the advancement of degenerative changes post-fracture and increased ankle symptoms. He recommended a four-phase treatment program but opined that in any event plaintiff would be henceforth unable to work without pain unless his work was a sit down supervisory job.

The court finds nothing inconsistent between Dr. Materson’s opinion and that of Drs. Schneider and Ambrister. The court notes that Dr. Materson only takes the medical analysis one step further. The court was impressed by Dr. Materson’s professional opinion and believes that he has correctly analyzed plaintiff’s problem and the prognosis.

This conclusion is supported by other evidence. It was established that despite the arthritic ankle plaintiff worked steadily and without substantial problems as a pipefitter from 1969 until 1978. He also functioned off the job without observed difficulty. These facts were established by plaintiff’s work record and numerous witnesses.

Since 1978, the combination of the ankle and toe problems have substantially inhibited the performance of his work as a pipefitter. He has worked only about half of the time since that accident. He wears a below knee brace that helps take some of the weight off the ankle. He has a pronounced limp and is unable to climb, stoop, or lift. The court finds that this disability is a result of the accident of 1978.

The initial injury to the toes was quite painful. This pain subsided but by four months post accident when he returned to work a new pain problem was present in the ankle which was an enhancement of 
*1274
the arthritic process, an enhancement caused directly by the gait and weight bearing changes resulting from the bad toes. This condition is permanent and the court finds that the pain and suffering which has been and will be endured was substantially caused by the accident of 1978.

The court awards $25,000 for pain and suffering, past and future, $75,000 for disability and lost wages, past and future; and $2,479.06 for medical expenses. Judgment is rendered in favor of plaintiff and against defendants for the total of $102,479.06, with interest.”

Accordingly, we find that the award of $102,479.06 to plaintiff was well within the great discretion afforded the trier of fact on damages.
For the above and foregoing reasons, the judgment of the trial court is affirmed. Costs of appeal are assessed against the defendants, James A. Alexander, Dupont and Alexander Equipment Corporation and Western World Insurance Company, in soli-do.
AFFIRMED.