377 So.2d 400 (1979)
Jewel Ray FRANKLIN, et ux., Plaintiffs-Appellants,
v.
HAUGHTON TIMBER COMPANY et al., Defendants-Appellees.
No. 13946.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1979.
Rehearing Denied December 12, 1979.
Writ Granted February 15, 1980.
*401 Wilson & Veatch by Thomas A. Wilson, Shreveport, for plaintiffs-appellants.
Mayer, Smith & Roberts by Alex F. Smith, Jr., Shreveport, for defendants-appellees.
Before PRICE, MARVIN and JONES, JJ.
En Banc. Rehearing Denied December 12, 1979.
JONES, Judge.
The mother and father of deceased Mark Reese Franklin, plaintiffs in this wrongful death action, appeal a judgment rejecting their demands for damages sustained because of the death of their fifteen-year old son due to the negligence of one Donald Holm. The defendants are Keith Hoffee, d/b/a H & H Pulpwood, and his liability insurer, Western Casualty Company. Plaintiffs' cause of action is based upon a contention that Hoffee was the employer of the negligent Holm and as such was vicariously liable for the negligence of his servant. *402 The trial court rejected plaintiffs' demands based upon a factual determination that Holm was not employed by Hoffee at the time plaintiffs' son was killed. We differ with the trial court's conclusion that an employment relationship did not exist between Hoffee and Holm at the time of the accident, but we affirm the judgment for different reasons.
Hoffee, a 19-year old young man, had been engaged in the pulpwood producing business for about two years at the time of the accident. Donald Holm, age eighteen, the sole employee of Hoffee, had been employed by Hoffee for approximately one year before the accident occurred. Hoffee had purchased for $3,500 the timber on the tract of land where the accident occurred. Hoffee and Holm had been producing pulpwood from this tract for several months before the accident occurred. Hoffee owned a pulpwood truck, three chain saws and a vehicle called a Pack-a-Back which was used for the purpose of carrying the cut pulpwood from the forest where it was produced to the public road where the truck was located and upon which the wood was loaded and then hauled to market. The Pack-a-Back was equipped with a boom which could be extended approximately 35-feet into the air above the ground. On the end of the boom were claw-like devices used to load and unload the Pack-a-Back. The boom when in its lowest stored position on the Pack-a-Back was 14-feet, 11-inches from the ground. Holm's duties consisted of cutting and stacking pulpwood, driving the pulpwood truck to the market and doing whatever else he was instructed to do by Hoffee. He occasionally operated the Pack-a-Back. Holm was paid $30 per load for the days when wood was actually hauled and on other days of his employment when no wood was hauled he was paid $25 per day. Holm owned no equipment that was involved in the pulpwood operation and his relationship to it was solely that of an employee of Hoffee.
Commencing May 5, 1975 Hoffee planned to be off a week and take a canoe trip down the Red River. Because of pressing financial obligations Holm requested Hoffee to permit him to continue to work during Hoffee's absence. Hoffee agreed for Holm to continue to work during his absence and Holm was permitted to use all of the equipment, though there is a dispute as to whether or not during Hoffee's absence Holm was to have actually hauled any of the pulpwood cut by him to the market. On May 13th, the first day of Hoffee's planned absence from the woods, Holm went by plaintiffs' home for the purpose of getting the deceased's older brother to accompany him to the woods and assist him in the work. The deceased's older brother was not available and Holm accepted in lieu of him his 15-year old brother, Mark Reese Franklin. Holm and Mark went in Hoffee's truck to the location of Hoffee's timber tract where they left the truck upon the public road and went into the woods upon Hoffee's Pack-a-Back. They cut wood and loaded the Pack-a-Back with one load of wood and carried it without any difficulty from the woods to the pulpwood truck upon which they loaded the wood and returned to the woods on the Pack-a-Back. Later in the day they left the woods upon the Pack-a-Back with a second load of wood enroute to the pulpwood truck, and it was during this trip that Mark was killed.
The area where the timber tract was located was also used as a pasture for cattle, and there was a closed gate located a distance we surmise to be several hundred feet north of the site on the road where the truck was located. The Pack-a-Back had to pass through this gate to reach the truck. Between the gate and the location of the truck was a cleared right of way over which the Pack-a-Back traveled and angling across this right of way was a powerline approximately 18-feet high under which the Pack-a-Back had to pass in order to reach the site where the truck was parked. Holm was driving the Pack-a-Back and when he arrived at the gate Mark descended from the Pack-a-Back and opened the gate. Holm intended to pass through the gate and go directly to the truck without stopping to wait for Mark who would be closing the gate after Holm passed through *403 it. However, at some distance south of the gate Holm noticed the electric line under which he was passing was wavering in front of him and he knew this movement of the line was caused by the boom of the Pack-a-Back having become engaged in it. Because of this problem he stopped the Pack-a-Back and knowing of the danger to anyone that touched it he turned to warn Mark of the danger of boarding it because it was charged with electricity, but Mark did not hear the warning because he had already attempted to get on the Pack-a-Back and was immediately electrocuted.
The issue presented on appeal is whether defendants owe damages to Mark's mother and father for his death.
Plaintiffs contend that Mark's death was caused by the negligence of Holm in permitting the boom of the Pack-a-Back to come in contact with the electric wire above and thereby causing the electrocution of Mark. Plaintiffs then contend Hoffee, as the employer of Holm, is responsible for the negligence of Holm and is vicariously liable to them for the damages they sustained by virtue of Holm's negligence. The trial court found no employer-employee relationship existed between Hoffee and Holm at the time plaintiffs' son was killed and for that reason rejected their demands.
Defendants contend the factual conclusion of the trial court of no employer-employee relationship between Hoffee and Holm was a correct determination and its judgment rejecting plaintiffs' demands should be affirmed. Defendant alternatively contend that if there was an employer-employee relationship between Hoffee and Holm that Mark became a casual employee of Hoffee and for this reason plaintiffs' claims are limited to those which could be asserted by them under the Louisiana Workmen's Compensation Act.
The principal elements to be considered in determining whether an employer-employee relationship exists are: (1) selection and engagement; (2) payment of wages; (3) power of dismissal; and (4) power of control. Gaspard v. Travelers Ins. Co., 284 So.2d 104 (La.App. 3d Cir. 1973); St. Paul Fire & Marine Co. v. Richard, 208 So.2d 35 (La.App. 3d Cir. 1967); Alexander v. J. E. Hixson & Sons Funeral Home, 44 So.2d 487 (La.App. 1st Cir. 1950).
Hoffee had selected and engaged Holm to perform services in connection with his pulpwood business. These services had been performed for more than one year at the time of the fatal accident. Hoffee had the exclusive right to select his employees and he had no other employee but Holm. Hoffee had the power of control over Holm. He determined where, when and how Holm worked. Holm testified at trial that his usual duties were to cut and stack pulpwood, to drive the truck and "whatever he [Hoffee] told me to do", evidencing the total control that Hoffee had over Holm's work activities. Hoffee had the power to terminate Holm's employment at will. When Hoffee allowed Holm to cut the wood upon the designated tract, to use his truck, saws and Pack-a-Back machine during his absence, this was full exercise by Hoffee of control over when and how Holm worked. Holm found it necessary to seek Hoffee's permission to engage in these work activities in Hoffee's absence. Hoffee paid Holm's wages either on a rate of $30 per load or $25 per day, though on the date of the accident there was no set arrangement as to exactly what Holm was to be paid. Holm was to receive a part of the money received from the wood which he produced during Hoffee's absence. The very purpose of Holm's working during Hoffee's absence was to secure money to pay a truck note which was pressing him. The significance of the fact that Holm was using Hoffee's equipment with regard to the determination of whether or not an employer-employee relationship existed is found in the following quote from the decision of Coon v. Monroe Scrap Material Co., 191 So. 607 (La.App. 2d Cir. 1939):
"... It will not do to say that one who supplies all the equipment needed in the performance of services of the character we are discussing, and who advances the cash money indispensable to the successful conduct of the work, has *404 not the inherent power to wield a deciding and controlling influence upon the person doing the work. He is wholly dependent upon the will of his employer because, without the financial assistance and the free use of the equipment, the work could not be performed." Id. at 610.
The testimony of Holm taken at trial and the testimony of Hoffee taken in a deposition and introduced at trial establish the facts as set forth. The only evidence in the record which tends to cast any doubt upon the existence of the employer-employee relationship is one prior unsworn statement taken from Hoffee by an insurance investigator and three unsworn statements taken from Holm by investigators. The tenor of these statements was generally to the effect that because of Holm's need for money to pay the truck note that Hoffee agreed for Holm to work during his week's absence with Hoffee's equipment and cut Hoffee's timber and sell it and retain all of the price received from it with Holm's sole obligation being to pay for his own gas used in the production of the wood and repair anything he broke. An agreement of this kind would seem very improbable when it is considered against the background that Holm had worked for a year receiving only wages and when Hoffee no doubt needed funds to pay for his timber, equipment and otherwise meet his own expenses. When Hoffee was placed under oath he repudiated this statement which was written by the investigator in longhand and signed by Hoffee. Hoffee testified he authorized Holm to cut and stack wood and advised Holm that he would pay him for the work upon his return. Holm's testimony at trial repudiated the earlier statements given by him to the investigators that he was working for himself. Holm's testimony was that he was working for Hoffee on the day of Mark's death and is generally in accord with Hoffee's deposition testimony. Prior to the time that these statements were taken Hoffee sold the wood produced by Holm and Holm testified he received part of the money. These unsworn contradictory statements, when considered in light of all the established circumstances, together with Hoffee's and Holm's sworn testimony do not provide a substantial evidentiary basis to support the trial judge's factual determination that no employer-employee relationship existed between Hoffee and Holm at the time of Mark's death. We conclude this finding of fact by the trial court is clearly wrong and manifestly erroneous. Canter v. Koehring Co., 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978). We conclude Holm was working as an employee of Hoffee at the time of Mark's fatal accident.
The defendants contend alternatively that in the event there was an employment relationship between Hoffee and Holm on the date of Mark's death the decedent would then be a casual employee of Hoffee and for this reason plaintiffs would be precluded from asserting a tort action by the provisions of LSA-R.S. 23:1032 which provide that the remedies of an employee's dependents are limited to those provided for in Louisiana Workmen's Compensation law.
Hoffee testified he did not know the decedent, that he was unaware that decedent was going to work for Holm during his absence and Holm had no authority to employ him. Holm corroborated the testimony of Hoffee and acknowledged that Hoffee was unaware that Mark was going to work for him that day and admitted he was not authorized by Hoffee to employ Mark as his helper. Mark had never worked on Hoffee's job before. Holm had never employed anyone before to work for Hoffee.
An employee who employes another on his master's behalf without his master's expressed or implied authority does not create a relationship of employer-employee between his helper and his employer in absence of ratification by the employer of the employment agreement at a subsequent time. Gentry v. Peterson, 19 So.2d 623 (La.App.2d Cir. 1944); Harris v. Sun Indemnity Co. of N. Y., 28 So.2d 403 (Ct. of App. Orleans 1946); Porter v. La. Grocers Co-operative, Inc., 233 So.2d 709 (La.App. 4th Cir. 1970). Mark, who was employed by *405 Holm without the knowledge or authorization of Hoffee, did not become Hoffee's casual employee. Holm testified he had agreed to pay decedent, though the specific amount of his compensation had not been determined. Holm had enlisted decedent's assistance and had engaged Mark to help him measure the wood to be cut. Therefore, he had power of control over Mark's action while on the job and the power to dismiss Mark. Under these circumstances Mark, having worked throughout the day and having assisted in the production and hauling of approximately four cords or a truckload of pulpwood for compensation which he was to receive from Holm, became Holm's employee. Carter v. Lanzetta, 249 La. 1098, 193 So.2d 259 (1966). He was not the employee of Hoffee who was totally unaware of Mark's participation in the pulpwood operation until after his death. Porter v. La. Grocers Co-operative, Inc., supra. Because the employer-employee relationship existed between Mark and Holm, plaintiffs' exclusive remedy against Holm lies in the workmen's compensation statute under the provisions of LSA-R.S. 23:1032.
The only negligence which brought about the electrocution of decedent was Holm's failure to secure the boom in its proper and lower position upon the loaded Pack-a-Back. His failure to lower the boom to a height of less than 18-feet was the reason why the boom became engaged in the electric transmission lines. The absent Hoffee had no part in the negligence of Holm in attempting to travel under the line with the boom in a raised position to a height above 18-feet. Under these circumstances the plaintiffs do not assert that Hoffee was guilty of any personal fault in connection with decedent's death. Plaintiffs' sole contention concerning Hoffee's liability is that he is vicariously responsible for the negligent conduct of his employee Holm.
In Louisiana the liability of a servant for damages under LSA-C.C. Art. 2315 for the wrongful death of another caused through his negligence is primary. The master's liability imposed by LSA-C.C. Art. 2320 in favor of third persons for the damages occasioned by his servant's negligence rests solely on the principle of respondeat superior and is derivative or secondary in all cases where the master himself is not at fault. Williams v. Marionneaux, 240 La. 713, 124 So.2d 919 (1960); Caldwell v. Montgomery Ward & Co., Inc., 271 So.2d 363 (La.App. 2d Cir. 1972).
In Marionneaux, supra, the court described the master's liability as follows:
"In Louisiana, the liability of the servant for damages under Article 2315 of the Civil Code for injuries to another caused through his negligence is primary. Conversely, the liability imposed on the master by Article 2320 of the Code in favor of third persons for the damages occasioned by his servant's negligence, while exercising the functions in which the servant is employed, rests solely on the principle of respondeat superior and is derivative or secondary in all cases where the master himself is not at fault." Id. 124 So.2d at 922
The court while discussing the plaintiff's release of the servant containing a reservation of the claim against the master stressed plaintiff had but one cause of action against the servant and the master. The court stated:
"There was but one cause of action which the law gave plaintiff in recompense for his injuries. That cause of action sounded exclusively in tort under Article 2315 of the Civil Code. Under Article 2320 this same cause of action for Blanchard's alleged tort was assertable against Marionneaux but it was cognizable only because Blanchard was allegedly acting in his function as an employee of Marionneaux at the time Blanchard committed the negligencet [sic] act causing plaintiff's injury." Id. 124 So.2d at 923 (emphasis supplied)
See also Thomas v. Clarklift and Reliance Ins. Co., 375 So.2d 375 (La.1979) where the supreme court made the following statement with regard to the liability of a master for the negligent acts of his servant:
"It is true, of course, as held in Caldwell, that a master's liability with respect to *406 his employee's negligence is secondary or vicarious, and that the employer is not a joint tortfeasor with its employee."
Hoffee, the master here, cannot be vicariously liable for the negligence of his servant Holm because Holm is not primarily liable under LSA-C.C. Art. 2315 for the tort he committed. LSA-R.S. 23:1032[1] removed Holm's primary tort liability by making Holm liable exclusively in workmen's compensation for any injuries caused to his employee. The tort remedy of Article 2315 is eliminated by the workmen's compensation remedy.
This provision has been construed to eliminate the Civil Code Article 2315 cause of action against an employer whose negligent acts brings about the injury or death of an employee. Colorado v. Johnson Iron Works, 146 La. 68, 83 So. 381 (La.1919); Atchison v. May, 10 So.2d 785 (La.1942); Hawkins v. Employers Casualty Company, 177 So.2d 613 (La.App. 3d Cir. 1965); Cripe v. Haynes, 350 So.2d 956 (La.App. 2d Cir. 1977).
The court in Atchison, supra, in discussing the workmen's compensation cause of action against the employer whose negligence brought about the death of plaintiff's brother quoted from the earlier Colorado v. Johnson, supra:
"... Said act, by its plain and express terms, does make the remedy which it provides exclusive in a case like the present; it therefore does apply to this case, and does supersede article 2315 of the Code ... First, because formerly the right to sue for the death of a human being, which is the right plaintiff is seeking to exercise, did not exist in this state, but was given by statute, and, of course, the Legislature may repeal a statute enacted by itself, or supersede it by another statute; second, because the regulation of what recourse one person may have against another for personal injury is a matter entirely within legislative discretion." Id. 10 So.2d at 787
The court further stated:
"The mere fact that it so happens that the deceased employee in this case left no dependents cannot have the effect of providing a right of action in the plaintiffs under Article 2315 of the Civil Code, when that right had been superseded and abated by the provisions of the Employer's Liability Act." Id. at 789
In the decision of Cripe, supra, this court recognizes that the compensation act in providing that remedies therein are exclusive against the employer created a substantive change in the law and eliminated the tort cause of action against a negligent employer:
"The injured employee has no cause of action against the employer for the damages caused by the employer's fault." Id. 350 So.2d at 961
The Civil Code 2315 cause of action against a negligent employer by an injured employee or his dependents is totally eliminated by the Louisiana Workmen's Compensation law which provides in lieu thereof designated specific benefits to the injured employee or his dependents.
The cited jurisprudence construing LSA-R.S. 23:1032 requires the conclusion that plaintiffs have no cause of action against Holm and the jurisprudence construing the master's liability requires there to be primary legal responsibility in the servant before the master becomes secondarily liable. Under these circumstances Hoffee cannot be vicariously liable for the death of Mark due to the negligence of Holm.
While the Louisiana Workmen's Compensation law eliminates the tort cause of action against an employer it reserves unto an employee or his dependents and his employer for compensation benefits expended by him a cause of action against a third person who is legally responsible for *407 the injury or death of the employee. LSA-R.S. 23:1101:
"When an injury for which compensation is payable under this Chapter has been sustained under circumstances creating in some person (in this Section referred to as third person) other than the employer a legal liability to pay damages in respect thereto, the injured employee or his dependent may claim compensation under this Chapter and the payment or award of compensation hereunder shall not affect the claim or right of action of the injured employee or his dependent against such third person, nor be regarded as establishing a measure of damages for the injury; and such injured employee or his dependent may obtain damages from or proceed at law against such third person to recover damages for the injury.
Any employer having paid or having become obligated to pay compensation under the provisions of this Chapter may bring suit against such third person to recover any amount which he has paid or become obligated to pay as compensation to any injured employee or his dependent." (Quoted as it was at the time of the accident sued upon and prior to the 1976 amendment.)
Because Hoffee is not responsible for the negligence of Holm which brought about Mark's death under the doctrine of respondeat superior and because he is guilty of no personal negligence which contributed to Mark's death, he is not a third person against whom a tort action may be asserted under the provisions of LSA-R.S. 23:1101.
AFFIRMED at appellant's costs.
NOTES
[1] LSA-R.S. 23:1032The rights and remedies herein granted to an employee or his dependent on account of a personal injury for which he is entitled to compensation under this Chapter shall be exclusive of all other rights and remedies of such employee, his personal representatives, dependents, or relations ..."