449 So.2d 712 (1984)
CONCRETE POST-TENSIONING, INC., Plaintiff-Appellant,
v.
ARMCO, INC., et al., Defendants-Appellees.
No. 83-584.
Court of Appeal of Louisiana, Third Circuit.
April 11, 1984.
*713 Porteus R. Burke, New Iberia, for plaintiff-appellant.
Sessions, Fishman, Rosenson, Boisfontaine & Nathan, Louis L. Galvis and Stephen Doody, New Orleans, Kenneth W. Cole, Lafayette, for defendants-appellees.
Before GUIDRY, FORET and CULPEPPER,[*] JJ.
GUIDRY, Judge.
On April 27, 1982, Concrete Post-Tensioning, Inc. (hereafter CPT) filed this suit asserting a claim for payment due and recognition of a laborer's lien and privilege under the Louisiana Private Works Act against Big D Contractors, Inc. (hereafter Big D) and Armco, Inc., Building Systems Division, (hereafter Armco). Armco answered by general denial, alternatively asserting a written waiver and release as a bar to plaintiff's claim against Armco and the enforcement of its lien and privilege. On the basis of this waiver and release, Armco filed a motion for summary judgment. After hearing, the trial judge granted the motion for summary judgment and dismissed Armco from the action. Plaintiff appeals.
The facts, as reflected by the record, are as follows. Armco was the general contractor on a construction project in New Iberia, Louisiana, known as the National Supply Company, New Iberia Center. As part of this project, Armco entered into a sub-contract with Big D to furnish all labor and materials to construct a foundation slab for a fabrication shop building which was to be erected. Big D thereafter entered into an oral agreement with CPT whereby CPT was to perform some of the construction work on this slab. Armco was not a party to this agreement. After completion of the work on the slab by Big D and CPT, Armco alleged that there were certain defects in the work which required correction. A dispute thereafter arose between Big D and CPT as to who was responsible for correcting the defects and the amount of money due by Big D to CPT for its services and materials. As a result of the dispute, Big D refused to pay CPT and CPT filed a lien against the aforesaid project. Thereafter, in accordance with the terms and conditions of the subcontract between Armco and Big D, Armco refused to make final payment to Big D until the dispute between Big D and CPT was settled and the lien was cancelled.
A series of meetings were then held in the offices of Armco, attended by L.J. Bishoff representing Armco; Dave Hall representing Big D; Leon Minvielle, III, counsel for Big D; and, Porteus R. Burke, counsel for CPT. On the basis of these negotiations, CPT and Big D entered into a written agreement. Under the terms of that agreement, the signatories, CPT and Big D, acknowledged their dispute and agreed to *714 mutually waive and release any and all liens against the project in consideration of the payment by Armco of the sum of $35,544.00 to Big D; payment by Big D of the sum of $26,071.00 to CPT; and, the deposit by Big D of the sum of $9,473.93 in a joint escrow account under the names of both appearers for corrective work. In the agreement, both appearers acknowledged and receipted for the payment by Armco. A copy of the agreement is annexed as Appendix I.
This agreement was executed on April 20, 1982 by CPT and Big D in return for which Big D delivered two checks to CPT's attorney, one in the amount of $26,071.00, and one in the amount of $9,473.93, the latter amount to be placed in escrow as aforestated. Receipt of payment in these amounts was acknowledged by CPT in the written agreement. On the same day, a representative of Big D then delivered to Armco the written agreement and obtained from Armco a check in the amount of $70,027.73, of which $35,544.00 was for the work on the slab. Big D negotiated Armco's check and actually received the sum of $70,027.73. On April 22, 1982, Big D issued a stop payment order on the two checks issued and delivered to CPT. Big D has not since made payment to CPT of the sums due CPT under the agreement. As a result, CPT refused to cancel its lien and filed this lawsuit.
The issue on appeal is whether the trial judge erred in granting defendant's motion for summary judgment. The trial judge granted the motion for summary judgment stating that there was no genuine issue of material fact and that Armco was entitled to judgment as a matter of law under the doctrine of equitable estoppel. We affirm.
In Industrial Sand and Abrasives, Inc. v. Louisville and Nashville Railroad Company, 427 So.2d 1152 at 1153 (La. 1983), the Supreme Court reiterated the following standards for reviewing a summary judgment:
"The sole purpose for the motion for summary judgment is to determine in advance of trial whether a genuine issue of material fact exists between the litigants. Miller v. East Ascension Tel. Co., 263 So.2d 360 (La.App. 1st Cir.), writs denied, 262 La. 1121, 266 So.2d 430 (1972); cf. Albatross Shipping Corp. v. Stewart, 326 F.2d 208 (5th Cir.1964); see also Kay v. Carter, 243 La. 1095, 150 So.2d 27 (1963); Comment, Development of Jurisprudence in Louisiana Relative to Summary Judgment Since 1960, 12 Loyola L.Rev. 128 (1965-66). The summary judgment procedure in Louisiana is set out, in La.C.C.P. art. 966 et seq. These provisions are based upon the Federal Rules of Civil Procedure and even though there has developed a substantial body of jurisprudence in the courts of this state regarding the motion for summary judgment, the prior jurisprudence of the federal courts pertaining to the proper use of this device remains helpful and persuasive. Roy & Roy v. Riddle, 187 So.2d 492 (La.App. 3rd Cir.), writs denied, 249 La. 724, 190 So.2d 236 (1966).
La.C.C.P. art. 966 provides that any party may move for a summary judgment at any time, and the mover is entitled to summary judgment in his favor "if the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to a material fact, and that the mover is entitled to judgment as a matter of law." Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La.1980); cf. Fed. Rule Civ.Pro. 56. The burden is on the mover to show clearly that there is not a genuine issue of material fact in dispute, and any reasonable doubt as to the existence of a genuine issue of material fact must be resolved against the mover and in favor of trial on the merits. Thornhill v. Black, Sivalls & Bryson, 394 So.2d 1189 (La.1981); White v. Baker Manor Nursing Home, 400 So.2d 1168 (La.App. 1st Cir.), writs denied, 403 So.2d 68 (La.1982); cf. Erco Industries, Ltd. v. Seaboard Coast Line Railroad Co., 644 F.2d 424 (5th Cir.1981); Joplin v. Bias, 631 F.2d 1235 (5th Cir.1980).

*715 To satisfy this burden, the mover must meet a strict standard of showing that it is quite clear as to what is the truth and that there has been excluded any real doubt as to the existence of a genuine issue of material fact. The pleadings, affidavits, and documents of the mover must be scrutinized closely, while those of the opponent to the motion are to be indulgently treated. Vermilion Corp. v. Vaughn, 397 So.2d 490 (La.1981); Mashburn v. Collin, 355 So.2d 879 (La.1977); cf. Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)."
Armco does not contend that CPT does not have a valid right under the Private Works Act to assert its lien or privilege against the project, rather Armco relies on the contractual release and waiver of such rights by CPT or equitable estoppel as a bar to recognition of CPT's claim. Armco asserts the written agreement of April 20, 1982 as the basis for waiver, release or estoppel. The three theories by which defendant asserts that the written agreement serves as a matter of law as a bar to plaintiff's claims are as follows:
1. The written agreement between Big D and CPT constitutes a valid compromise and release agreement that is res judicata insofar as all claims brought against Armco and the project are concerned.
2. The written agreement between Big D and CPT contains a stipulation pour autrui in favor of Armco that cannot be revoked.
3. Under the doctrine of equitable estoppel, CPT is barred by its own conduct from bringing this action to enforce the lien and privilege.
We conclude that Armco is entitled to judgment as a matter of law under the doctrine of equitable estoppel. It is therefore unnecessary for us to consider the other theories relied upon by Armco.

CPT'S CONDUCT AS A BAR TO ACTION ON BASIS OF EQUITABLE ESTOPPEL
In American Bank & Trust Company v. Trinity Universal Insurance Company, 251 La. 445, 205 So.2d 35 at 40 (La.1967), the Supreme Court set forth the following considerations for application of the doctrine of equitable estoppel:
"Equitable estoppel may be defined as the effect of the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct. Founded upon good faith, the doctrine is designed to prevent injustice by barring a party, under special circumstances, from taking a position contrary to his prior acts, admissions, representations, or silence.
Since estoppel bars the normal assertion of rights, courts apply the doctrine cautiously.
To raise an equitable estoppel, the record must establish not only that the pleader relied upon a representation or other conduct, but also that he was justified in so doing. Justifiable reliance is fundamental." (citations omitted)
The trial court properly identified the three elements necessary to the plea of estoppel as: (1) the party sought to be estopped must be guilty of such conduct as was intended to lead the other party to act thereon; (2) the party seeking to invoke estoppel must show its good faith and diligence; and, (3) the party pleading estoppel must have been misled to its prejudice.[1]
The conduct of CPT which was intended to lead Armco to act was the execution and delivery of a document to Armco stating that, upon payment by Armco to Big D, all liens against the project would be released. The record makes abundantly *716 clear that the dispute over the slab work was solely a matter between Big D and CPT. Armco's only interest in the dispute was its desire to have the lien against the project cancelled. To this end, Armco refused to make final payment to Big D until the dispute between Big D and CPT was resolved and the lien against the project cancelled.
The written agreement was drafted by the attorney representing CPT, and was executed by representatives of CPT and Big D. It was then delivered to Armco's representative by Dave Hall, representing Big D. As aforestated, the agreement stated that each appearer (CPT and Big D) agreed to waive all liens against the project in consideration of payment by Armco of $35,544.00 to Big D. Upon receipt of the agreement, and in reliance on the waiver contained therein, Armco paid Big D as directed by the agreement.
The foregoing sequence of events, regarding which there are no factual disputes, clearly show that CPT drafted and executed the written agreement to induce Armco to pay the balance it owed to Big D, out of which funds CPT expected to receive payment from Big D in accordance with the terms of the contract. The record further shows that, without delivery of the written agreement and waiver, Armco would not have made the aforementioned payment to Big D. Thus, the first necessary element of the plea of estoppel is present.
The second necessary element, good faith and diligence on the part of the party invoking the doctrine, is likewise present. The record is completely devoid of any evidence of bad faith on the part of Armco, and appellant points to no act on the part of Armco which is remotely suggestive of bad faith.
The appellants strongly urge a lack of due diligence on the part of Armco. Specifically, they assert that, as reflected by the pleadings and documents on file, particularly, the affidavit of CPT filed in opposition to Armco's motion, Armco actively participated in the discussions between the parties, and all parties understood that no lien rights would be waived by CPT until it received payment from Big D. Because payment was subsequently stopped on Big D's check issued to CPT, appellant urges that Armco lacked due diligence by failing to take measures to insure that Big D actually made the payments to CPT.
Even affording indulgent treatment to CPT's affidavits, etc., as we must, no lack of diligence is shown on the part of Armco. When Armco's representative delivered payment to the representative of Big D, he relied on a written agreement between Big D and CPT wherein CPT acknowledged receipt of payment from Big D. These checks, totalling $35,544.00, had in fact been delivered by Big D to CPT in accordance with the agreement when such agreement was presented to Armco. Armco's representative thereafter made payment to Big D, as directed by the agreement.
Appellant would have us require Armco to foresee that the checks issued by Big D would be dishonored, and thereafter insure that payment was made by Big D to CPT. To do so would be to require far more of Armco than due diligence in the protection of its rights. To the contrary, such a requirement would impose upon Armco a burden to protect the rights of CPT, who acknowledged in writing receipt of the payment from Big D.
The record makes clear that, if due diligence was lacking by a party to this suit, it was a lack of diligence on the part of CPT. The rights of CPT clearly could have been protected by establishing some mode of payment which would insure that CPT was in fact paid. However, rather than avail itself of any of a number of methods available to accomplish this purpose, CPT chose to acknowledge receipt of payment from Big D in exchange for two checks. The record clearly shows that the party in the superior position to prevent the breach by Big D was CPT, who itself devised the method of payment. CPT now would have us find a lack of due diligence on the part of Armco, which carefully protected its rights and paid Big D in precisely the manner directed by CPT. We find that Armco *717 was in good faith and exercised due diligence.
The third element necessary to invoke the doctrine of equitable estoppel is also present. Armco has shown that it has been misled to its prejudice. In particular, the record shows that, in the preliminary negotiations between the three parties, Armco's only objective was to pay Big D the balance owed under the contract, but only upon an agreement by Big D and CPT to waive all liens against the jobsite. Big D and CPT provided Armco with such an agreement waiving all liens. In reliance on the waiver, Armco paid according to the direction of the agreement. Despite the fact that Armco lived up to its end of the arrangement, CPT refused to comply with its waiver agreement and now seeks enforcement of its lien against the jobsite. The existence of the lien worked to the prejudice of Armco, which had bargained and paid for its waiver. Thus, the third element necessary to invoke the doctrine of equitable estoppel is also present.
The instant case is closely analogous to that of Baton Rouge Lumber Company v. Gurney, 173 So.2d 251 (La.App. 1st Cir. 1965). In that case, the defendant, Gurney, entered into a contract with a contractor, Clegg, for the performance of remodeling work on a home. Clegg purchased materials for the job from the plaintiff, Baton Rouge Lumber Company. After completing the work, Clegg obtained from Baton Rouge Lumber Company a statement of account for the Gurney job marked PAID. Gurney, relying on the receipted statement showing that all materials had been paid for, paid Clegg the balance due on the contract.
The check given by Clegg to Baton Rouge Lumber, in return for which the receipted statement was given, was subsequently returned by the bank on which it was drawn. Baton Rouge Lumber was unable to collect from Clegg, who was eventually adjudged a bankrupt. Thereafter, Baton Rouge Lumber filed a lien on the Gurney property, and filed suit seeking recognition of the lien and payment in full of the balance owed for materials used on the job. Gurney interposed a plea of estoppel, which the trial court maintained, rejecting the demands of Baton Rouge Lumber.
On appeal, the court found that all three elements necessary to a plea of equitable estoppel were present. In particular, the court found: (1) that Gurney was misled to his prejudice by the action of Baton Rouge Lumber in receipting the statement of account; (2) that Gurney was in good faith and exercised due diligence. In this regard, the court found that the plaintiff's burden of proving due diligence did not require that he withhold payment to Clegg until the lien period elapsed; and, (3) that Baton Rouge Lumber's action in receipting the statement of account was intended to lead Gurney to act thereon, or at the very least, it was reasonable for Baton Rouge Lumber to anticipate that Clegg would use the statement to prove to Gurney that all materials had been paid for, in order to compel Gurney to pay the balance due under the contract.
The court cited the following rule which has equal application to the instant case:
"It is well settled by the jurisprudence of this state that when one of two innocent persons must suffer by the act of a third person the loss must fall upon the one of them who has furnished the third person with the means of doing the injury. Henderson v. Louisville & N.R.R., 3 Orleans App. 43; Lawrence v. Sunrise Petroleum Co., La.App., 163 So. 742."
As in Baton Rouge Lumber Company v. Gurney, supra, the plaintiff provided the means by which the third party, in our case Big D, was able to inflict the injury. CPT now seeks to recover from another innocent party who, unlike CPT, exercised due diligence in the protection of its rights. We find that the plea of equitable estoppel is well founded and that the loss, if any, as between Armco and CPT must be absorbed by CPT.
For the above and foregoing reasons, the judgment of the trial court is affirmed. All costs are assessed to plaintiff-appellant.
AFFIRMED.
NOTES
[*] Judge William A. Culpepper, Retired, Judge Ad Hoc.
[1] We have considered that under LSA-C.C.P. Art. 1005, the plea of estoppel is a special defense which must be set forth affirmatively in the answer which was not done in this case. Nonetheless we deem the answer amended to conform to the proof offered by the affidavits and depositions. Vermilion Corp. v. Vaughn, 397 So.2d 490 (La.1981).