466 So.2d 1373 (1985)
Kenneth Troy GREEN, Plaintiff-Appellee,
v.
James DeFELICE, et al., Defendant-Appellant.
No. 84-271.
Court of Appeal of Louisiana, Third Circuit.
April 10, 1985.
*1375 Allen, Gooch & Bourgeois, Sera H. Russell, IV, Lafayette, for defendant-appellant.
Armentor & Wattigny, Gerard B. Wattigny, New Iberia, for plaintiff-appellee.
Lynn DeRouen, New Iberia, Voorhies & Labbe, E. Gregory Voorhies, Nicholas Gachassin, Jr., Lafayette, for defendant-appellee.
Before DOMENGEAUX, DOUCET and KING, JJ.
KING, Judge.
Kenneth Troy Green, (hereinafter Green) the plaintiff in this tort suit, was injured on December 29, 1979 while helping his uncle, James DeFelice, (hereinafter DeFelice) operate an insulation machine installed in the back of a Ford Van Truck.
Green brought this action against the owner of the truck, DeFelice, and his automobile liability insurer, Argonaut Insurance Company (hereinafter Argonaut). Argonaut moved for a summary judgment based upon its various policy defenses and the motion was denied. The case was tried before a jury which rendered a verdict in favor of Green against DeFelice and Argonaut, in solido, for $100,000.00. After trial Argonaut moved for a judgment notwithstanding the verdict and alternatively for a new trial. Both motions were denied. From this judgment, the defendant, Argonaut, timely perfected this appeal. We affirm.
Argonaut contends on appeal that (1) a summary judgment should have been granted based upon its various policy defenses; (2) there was no coverage by its policy for this accident; (3) the trial court committed error in failing to give jury instructions as requested and required by law; (4) the jury erred in failing to find that Green assumed the risk or was contributorily negligent, (5) the trial court erred in failing to grant a judgment notwithstanding the verdict; and (6) the trial court erred in denying defendants' motion for a new trial without a hearing.

FACTS
In his reasons for judgment the trial judge set forth the facts, which we adopt as our own, as follow:
"Defendant, Defelice, was in the insulating business. He had bought a truck containing insulating compartments on the rear thereof which enabled him to transport, mix, and blow into the attics of buildings, the powdery insulating material which was his stock in trade. He had a pump or blower in his truck which would blow the mixed insulating material through hoses into the attics of buildings. It was his custom, once all the insulating material had been blown into the building, to level the insulating material in the attic. This insulating material, in spots, was uneven. In order to even it up, he had a device in the blower which *1376 shut off the airconditioning [sic] material and caused it to blow only forced air. With this forced air, he could level the material in the attic.
Defelice had controls in the attic which would turn the blower in the truck off and on at his will. Defelice, however, had no way to shift the door in the blower from insulating material to forced air. He would thus have to climb down from the attic and get into the truck in order to shift the door in the blower. This being difficult and time consuming, Defelice would usually try to get some relative or friend to go with him and remain near the truck. Thus, whenever he got ready to shift the blower, he could cut off the air pump or blower, and yell down to his helper to make whatever adjustment he wanted. Since communication was difficult from the attic to the truck, he had developed a system with his various helpers to allow a certain length of time for the shift, apparently some forty-five seconds. After that, he would turn the blower on again in order to accomplish his purpose.
In order for the helper on the ground to shift the door from blowing airconditioning [sic] material to air alone, the helper would have to reach his arm inside the truck through an opening which was encircled by a chain and sprocket arrangement. The opening, through the chain and sprocket arrangement, was somewhat narrow and a person reaching through would be in danger of getting his clothing or arm caught in the chain and sprocket if the blower was in operation. This was the reason for the forty-five second delay so that the adjustment could be made and the arm pulled out.
On the date in question, December 29, 1979, defendant's nephew, a very young man barely out of his teens ... was helping Defelice at the truck. It apparently was a cold day and young Kenneth Green, the nephew, had on some type of coat or jacket. Defelice stopped the operation for the purpose of shifting the door, which was being done by young Kenneth Green, the plaintiff. For some reason Defelice did not wait as long as usual, apparently, from the evidence, but started the blower again. The plaintiff's clothing was caught in the chain and sprocket, pulling his right hand and arm into the chain and sprocket nearly severing the right hand and arm from one another in the vicinity of the right wrist. A slight bit of bone and some flesh held the hand onto the arm. Apparently some excellent medical attention was received by this young man, both from the local orthopedic surgeon, and from the hand surgeon in New Orleans, who assisted. The young man ended up with his hand greatly disabled. The hand is functional to some extent." (Trial Transcript Pages 226-228.)

ASSIGNMENT OF ERROR NUMBER 1
Argonaut contends that the trial judge erred in failing to grant their motion for summary judgment based upon the provisions of its policy. Our court has recently detailed the standard for considering a motion for summary judgment in Concrete Post-Tensioning v. Armco, Inc., 449 So.2d 712 (La.App. 3rd Cir.1984) by stating:
"In Industrial Sand and Abrasives, Inc. v. Louisville and Nashville Railroad Company, 427 So.2d 1152 at 1153 (La.1983), the Supreme Court reiterated the following standards for reviewing a summary judgment:
`The sole purpose for the motion for summary judgment is to determine in advance of trial whether a genuine issue of material fact exists between the litigants. Miller v. East Ascension Tel. Co., 263 So.2d 360 (La.App. 1st Cir.), writs denied, 262 La. 1121, 266 So.2d 430 (1972); cf. Albatross Shipping Corp. v. Stewart, 326 F.2d 208 (5th Cir.1964); see also Kay v. Carter, 243 La. 1095, 150 So.2d 27 (1963); Comment Development of Jurisprudence in Louisiana Relative to Summary Judgment Since 1960, 12 Loyola L.Rev. 128 (1965-66). The summary judgment procedure in Louisiana is set out, in La.C.C.P. art. 966 et seq. These provisions are based upon the *1377 Federal Rules of Civil Procedure and even though there has developed a substantial body of jurisprudence in the courts of this state regarding the motion for summary judgment, the prior jurisprudence of the federal courts pertaining to the proper use of this device remains helpful and persuasive. Roy & Roy v. Riddle, 187 So.2d 492 (La.App. 3rd Cir.), writs denied, 249 La. 724, 190 So.2d 236 (1966).
`La.C.C.P. art. 966 provides that any party may move for a summary judgment at any time, and the mover is entitled to summary judgment in his favor "if the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La. 1980); cf. Fed.Rule Civ.Pro. 56. The burden is on the mover to show clearly that there is not a genuine issue of material fact in dispute, and any reasonable doubt as to the existence of a genuine issue of material fact must be resolved against the mover and in favor of trial on the merits. Thornhill v. Black, Sivalls & Bryson, 394 So.2d 1189 (La.1981); White v. Baker Manor Nursing Home, 400 So.2d 1168 (La. App. 1st Cir.), writs denied, 403 So.2d 68 (La.1982); cf. Erco Industries, Ltd. v. Seaboard Coast Line Railroad Co., 644 F.2d 424 (5th Cir.1981); Joplin v. Bias, 631 F.2d 1235 (5th Cir.1980).
`To satisfy this burden, the mover must meet a strict standard of showing that it is quite clear as to what is the truth and that there has been excluded any real doubt as to the existence of a genuine issue of material fact. The pleadings, affidavits, and documents of the mover must be scrutinized closely, while those of the opponent to the motion are to be indulgently treated. Vermilion Corp. v. Vaughn, 397 So.2d 490 (La.1981); Mashburn v. Collin, 355 So.2d 879 (La.1977); cf. Adickes v. S.H. Kress & Co., 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).'" Concrete Post-Tensioning v. Armco, Inc., supra, at page 714.
Argonaut argues that two of its policy provisions exclude coverage and therefore a summary judgment should have been granted. The policy provisions only exclude coverage if the accident did not arise out of the ownership, maintenance, or use of the vehicle or if Green was an employee of DeFelice or if DeFelice could be held liable under any workmen's compensation or similar law. After a careful review of the insurance policy and supporting documents filed with the motion for summary judgment we find that there was a genuine issue of law as to whether the policy provisions excluded coverage for this accident and a genuine issue of fact as to whether the policy exclusions were applicable under the facts of the accident. For these reasons, we find that the trial court's denial of Argonaut's motion for summary judgment was correct.

ASSIGNMENT OF ERROR NUMBER 2
The Argonaut automobile liability insurance policy provides that the insurer will pay for damages "arising out of the ownership, maintenance or use of the automobile." Argonaut contends that while Green was physically in the automobile at the time of the accident, the automobile was not in "use" as contemplated by the terms of the policy.
Green contends on appeal that Argonaut did not plead or raise the "arising out of the use" provision at the trial court level and therefore should be precluded from raising it at the appellate level. We find this argument without merit in that Argonaut in its answer pled its insurance policy and all of its terms, conditions and limitations in defense of Green's claims. Argonaut apparently further raised the policy defenses in its motion for summary judgment in the trial court. For this reason Green's contention is without merit.
The meaning of the term "use" in vehicle liability insurance policies has been *1378 the subject of much litigation. It is well established that one need not be actually operating or driving a vehicle in order to be using it. Baudin v. Traders and General Insurance Company, 201 So.2d 379 (La. App. 3rd Cir.1967), writ refused, 251 La. 224, 203 So.2d 557 (1967); Tolleson v. State Farm Fire and Cas. Co., 449 So.2d 105 (La.App. 1st Cir.1984), writ denied, 450 So.2d 968 (La.1984).[1]
There are many cases which have given a broad interpretation to the term "use." In Duvingneaud v. Government Emp. Ins. Co., 363 So.2d 1292 (La.App. 4th Cir.1978), writ denied, 366 So.2d 560 (La.1979), a vehicle was found to be in "use" when the driver left his dog in his car with the windows open and the dog jumped out and ran into a motor bike injuring the plaintiff. In Bolton v. North River Insurance Company, 102 So.2d 544 (La.App. 1st Cir.1958) the vehicle was in "use" when plaintiff was standing outside the insured vehicle and a passenger in the car slammed the car door on plaintiff's hand. In Cagle v. Play land Amusement, Inc., 202 So.2d 396 (La.App. 4th Cir.1967), writ denied 251 La. 403, 404, 204 So.2d 578 (1967) the vehicle was in "use" when plaintiff was injured by a gun which accidentally discharged as defendant's employee used the gun to break into the insured vehicle to retrieve the car keys. In Baudin, supra, the defendant was sitting in his parked car whose position blocked the view for oncoming cars and, as a result, an approaching auto struck plaintiff's child who was a pedestrian. In all these cases the courts found the insured vehicles were in "use" within the meaning of the applicable liability insurance policies.
In each of the cited cases the injury causing activity was one that could be readily associated with the use of a vehicle. In the present case, the injury of the young man operating an insulation machine built into the back of a Ford Van Truck, can be readily associated with the "use" of this vehicle. The Argonaut insurance policy provides that it affords coverage to the 1964 Ford Van Truck used commercially in the insulation business of the James DeFelice Insulation Co. Further, the policy designates the business of the named insured as "insulation contractor." It is obvious from the policy itself that Argonaut knew that the van truck would be used commercially for operations in connection with an insulating business. When Green was injured he was in fact operating the insulation machine in the back of the van truck. For these reasons we find that the injury arose out of the "use" of the vehicle as contemplated by the policy provisions and that coverage was afforded under the policy for this accident.
Argonaut also contends that the plaintiff should be excluded from coverage under the policy's employment and worker's compensation exclusions. This exclusion of the policy reads as follows:
"This insurance does not apply:
* * * * * *
(b) to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;
(c) to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured or to any obligation of the insured to indemnify another because of damages arising out of such injury;
but this exclusion does not apply to any such injury arising out of and in the course of domestic employment by the insured unless benefits therefore are in whole or in part either payable or required to be provided under any workmen's compensation law;"
Argonaut argues that the trial court erred in not finding that there was an employer-employee relationship between DeFelice and Green, which would have limited Green's claims to those which he could assert under the Louisiana Workmen's Compensation Law, arguing that Green *1379 was an employee of DeFelice at the time of the accident. In Franklin v. Haughton Timber Co., 377 So.2d 400 (La.App. 2nd Cir.1979), writ denied 380 So.2d 624 (La. 1980), the Second Circuit set forth the primary elements to be considered in determining whether an employer-employee relationship exists to be:
"(1) selection and engagement; (2) payment of wages; (3) power of dismissal; and (4) power of control. Gaspard v. Travelers Ins. Co., 284 So.2d 104 (La. App. 3d Cir.1973); St Paul Fire & Marine Co. v. Richard, 208 So.2d 35 (La. App. 3d Cir.1967); Alexander v. J.E. Hixson & Sons Funeral Home, 44 So.2d 487 (La.App. 1st Cir.1950)." Franklin v. Haughton Timber Co., supra, at page 403
At the time of the accident, Green was attending school and working part-time at two jobs after school. He testified that he would occasionally help his uncle, DeFelice, on weekends by assisting him in the operation of the insulation machine. Green testified that he was never under any obligation to work for DeFelice and that when he did help him out he was free to leave the job at anytime. He only helped his uncle when his uncle needed him and if it was at a time convenient to Green and his personal schedule or other work activities. Thus, DeFelice did not control when, where and how Green worked. There was no fixed agreement between Green and DeFelice as to what, if any, wages were to be paid. Green testified that sometimes he was given different sums of money and other times none and that on some occasions he would receive a steak dinner or gasoline for his car. Green was never given any type of compensation for the work he did on the day he was injured. Thus, DeFelice and Green had no agreement for the payment of wages. The powers of control and payment of wages which an employer ordinarily commands over an employee are not present in this case. The relationship between Green and DeFelice was merely an uncle-nephew type of relationship, or a family relationship, rather than an employer-employee relationship as argued by Argonaut. Therefore, we find no manifest error in the jury's finding of fact that Green was not an employee of DeFelice at the time of the accident. Absent a showing of manifest error in the record, the finding of the trier of fact (in this case, a jury) will not be disturbed on appeal. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).

ASSIGNMENT OF ERROR NUMBER 3
Argonaut argues that the trial court erred in failing to give its requested jury instructions and that by the jury instructions that the court did give, that the court misled the jury regarding the elements of an employment relationship. The following instructions were submitted to the jury by the trial judge:
"An employee is one who performs services for another under the other's control and direction. The right of control is one of the most important tests in determining whether one is an employee. Whether the right of control is actually exercised is of much less importance and is not determinative.
The fact that money does not change hands does not defeat the employer-employee relationship if services are being exchanged. Wages do not have to be paid in cash.
If the jury finds that the Plaintiff is an employee, then his exclusive remedy is in workman's compensation, and you must deny him recovery."
We find no error in the instructions of the trial judge. Concerning the failure of the trial judge to give Argonaut's jury instructions we note that adequate jury instructions are those which fairly and reasonably point up the issues and provide correct principles of law for the jury to apply to those issues. Kaplan v. Missouri-Pacific R. Co., 409 So.2d 298 (La.App. 3rd Cir. 1981). The trial judge is under no obligation to give the exact and specific jury instructions, word for word, that may be submitted and requested by either party. The trial judge must, however, correctly charge the jury. Our review of the jury charge in this case convinces us that the *1380 jury was properly instructed. After a review of the jury charges given, we find no reversible error in the jury instructions.

ASSIGNMENT OF ERROR NUMBER 4
Argonaut contends the jury committed manifest error in failing to find Green assumed the risk or was contributorily negligent in operating the insulation machine. To uphold this contention, the record must negate the findings of the jury. Absent a showing of manifest error in the record, the trier of facts' finding (in this case, a jury) will not be disturbed. Arceneaux v. Domingue, supra. After a careful review of the record we find that there was sufficient evidence for the jury to have concluded that Green was not guilty of contributory negligence nor of assumption of the risk.
We find the record supports the jury's findings and the finding will not be disturbed on appeal.

ASSIGNMENT OF ERROR NUMBER 5
The standard of proof which the trial judge is to use in deciding a motion for judgment notwithstanding the verdict has been set forth by this Court in Campbell v. Mouton, 373 So.2d 237 (La.App. 3rd Cir. 1979):
"`On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidencenot just that evidence which supports the non-mover's casebut in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury." Campbell v. Mouton, supra, at page 239.
In applying this standard the court cannot weigh the evidence, pass on the credibility of the witnesses, or substitute its judgment of the facts for that of the jury. Campbell, supra.
Argonaut argues on appeal that the trial judge erred in failing to grant a judgment notwithstanding the verdict because the trial court characterized DeFelice's help as part-time workers in its written reasons for judgment in denying Argonaut's motion for a judgment notwithstanding the verdict and motion for a new trial. Although the judge may have used the words "part-time workers" this is certainly not either an indication or determination that Green was an employee of DeFelice. The jury found that Green was not an employee of DeFelice. The judge also denied defendant's Motion For Judgment Notwithstanding The Verdict so it is quite clear that the trial judge believed from the evidence presented at the trial that "reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions." We do not find that the trial judge was in error in not granting the defendants' Motion For Judgment Notwithstanding The Verdict.

ASSIGNMENT OF ERROR NUMBER 6
Argonaut argues that it was error for the trial judge to not grant a hearing on defendant's motion for a new trial.
The motion for a new trial was presented to the judge on the grounds that St. Paul Fire and Marine Insurance Company had a General Contractor's Liability policy covering DeFelice at the time of the accident and therefore a new trial should have been granted for the purpose of adjudication of its rights to contribution from St. Paul. The trial judge in his written reasons denying Argonaut's motion for a new trial found and we quote:
"Argonaut made no third party claim against St. Paul, made no effort during the trial to establish any liability of St. Paul, produced no evidence, did nothing whatsoever to proceed against St. Paul in this litigation. Plaintiff [sic] now wants the Court to grant a new trial in this *1381 matter so that Argonaut can proceed against St. Paul as a solidary obligor.
"The plaintiff [sic] has not, in this trial offered any proof whatsoever that St. Paul was a solidary obligor, has not third partied St. Paul, and has offered no evidence whatsoever in the matter. Argonaut has not pled surprise or inability to make any action against St. Paul that it might have deemed proper, prior to or at this trial, either. Under these circumstances, the Court will deny Argonaut's application for a new trial."
"Since this matter was not brought up and litigated in any fashion at the time of trial, it is too late to bring this matter up now after trial, verdict and judgment. See Ainsworth vs. Government Employees Insurance Company, 3rd Cir.1983, 427 So.2d 1220 and Raley vs. Carter, La.Supreme Court, 1982, 412 So.2d 1045." (Trial Transcript page 230.)
The contention that a motion for a new trial must be heard contradictorily is without merit. Such a motion may be denied summarily without holding a contradictory hearing. Sonnier v. Liberty Mutual Insurance Company, 258 La. 813, 248 So.2d 299 (1971); Bordelon v. Dauzat, 389 So.2d 820 (La.App. 3rd Cir.1980). We do not find that the trial judge was in error in denying, without a hearing, Argonaut's motion for a new trial. The lack of diligence of Argonaut in impleading or attempting to prove liability on the part of third persons, during the trial on the merits of this case, certainly is not grounds for a new trial.
For the reasons assigned herein, the judgment of the trial court awarding Kenneth Green damages in the amount of $100,000.00 is affirmed. Costs of this appeal are assessed to defendant-appellant, Argonaut.
AFFIRMED.
NOTES
[1] The elaborate "arising-out-of-use" test enunciated in Baudin was disapproved in Carter v. City Parish Government, Etc., 423 So.2d 1080 (La. 1982), rehearing denied 1982.