DOMENGEAUX, Chief Judge.
Horace Hanks filed this worker’s compensation suit seeking benefits for an injury received at the Grey Wolf Drilling Company awards banquet held on March 6, 1987. After trial on the merits, benefits were denied. Hanks has appealed and we reverse.
*532 FACTS
Hanks was employed by Grey Wolf as a motorman. On February 20, 1986, Hanks injured his wrist while changing a valve on a pump. As a result of this work related injury, Hanks received worker’s compensation benefits. During the course of his lengthy convalescence, Hanks was invited to an awards banquet sponsored by Grey Wolf for the purpose of recognizing certain employees. Hanks was given a shotgun as an award for five years of service with Grey Wolf. Hanks’ five years of service included the period of disability resulting from his wrist injury. The awards banquet was held at the Petroleum Club of Lafayette. Hanks slipped and fell on the Petroleum Club premises and injured his back.
Several days after the awards banquet, Hanks’ compensation benefits for his wrist injury were cut off. Coverage for the Petroleum Club accident was denied. Hanks was unable to return to work because of his back injury and had not returned to work by the time of trial.
ANALYSIS
Grey Wolf maintains that Hanks is not entitled to worker’s compensation benefits because he was not an employee at the time of his accident at the Petroleum Club. Finding that no employer-employee relationship existed, the trial judge denied benefits. After reviewing the record before us, we find that an employment relationship did exist at the time of the Petroleum Club accident and Hanks is entitled to benefits.
The testimony in the record indicates that Grey Wolf considered Hanks an employee during the time of his wrist disability. Grey Wolf retained Hanks’ name on its employee rolls and paid his health insurance premiums as a group member of Grey Wolf employees. Not only was Hanks invited to a Grey Wolf banquet to which only employees were invited, but he was also recognized at the banquet and given an award for five years of service with Grey Wolf. Hanks’ five years of service included the time in which he was unable to perform his job duties because of his wrist injury.
Hanks testified that he fully intended to return to his job duties at Grey Wolf and it is apparent Grey Wolf anticipated his return. In fact, the stated purpose of the awards banquet was for Grey Wolf to “get to know [its] people and keep some good key people.” Had it not been for Hanks’ employment with Grey Wolf, he would not have been invited to the awards banquet. The facts presented herein support the conclusion that Hanks, though temporarily absent from his employment duties, was an employee of Grey Wolf at the time of his accident at the awards banquet.
Today’s decision does not affect the criteria which define an employment relationship. In Bonstill v. Goldsberry Operating Co., 478 So.2d 729 (La.App. 3d Cir.1985), we articulated the principal elements to be considered in determining whether an employer-employee relationship exists: 1) selection and engagement, 2) payment of wages, 3) power of dismissal, and 4) power of control. See also Green v. DeFelice, 466 So.2d 1373 (La.App. 3d Cir.1985) and Franklin v. Haughton Timber Co., 377 So.2d 400 (La.App. 2d Cir.1979), writ denied, 380 So.2d 624 (La.1980).
Before Hanks injured his wrist in February 1986, his status as an employee was clear. Because he was temporarily disabled, however, does not mean that he was no longer employed by Grey Wolf, given the circumstances presented herein. La. R.S. 23:1361(B) prohibits the retaliatory discharge of an employee for filing a worker’s compensation claim; if a disability terminated the employer-employee relationship, there would be no need for Section 1361(B) because there would be no employee subject to discharge. Furthermore, one can envision numerous scenarios in which a temporarily absent employee, perhaps because of an extended vacation or maternity leave, will be asked to attend an employee function during the course of his or her absence. Does the absence serve to sever the employment relationship? We think not. Accordingly, we must reverse the decision of the trial court on the question of *533 Hanks’ status as an employee of Grey Wolf.
REMAINING QUESTIONS
Because we have resolved the question of employment status in the affirmative, we must next consider whether Hanks’ injury at the Petroleum Club arose out of and in the course of his employment with Grey Wolf. The awards banquet was attended only by Grey Wolf employees. Although Hanks was not required to attend, he was encouraged to attend by an invitation from his superiors and the promise of recognition at the banquet. He was given the choice of an award to be presented to him at the banquet and he chose a shotgun.
The banquet was sponsored for the joint benefit of employer and employees. The employees were treated to a meal and recognized for their service to the company. The employer, its supervisors, and management personnel, were given the opportunity to get to know their workforce in a social setting and encourage their continued loyalty to the company.
These facts are clearly distinguishable from the case of Palermo v. Reliance Insurance Co., 501 So.2d 333 (La.App. 3d Cir.), writ denied, 503 So.2d 19 (La.1987), where we held that a drowning victim, a professional employee, was not in the course and scope of his employment while on a fishing vacation. The trip was given to him by his employer as a reward for a job well done, but otherwise served no company purpose. In the case before us, the awards banquet was beneficial to both Grey Wolf and its employees. Such mutual benefits serve to place the ostensibly social activity within the course of employment because “the employer derives substantial direct benefit from the activity beyond the intangible value of improvement in employee health and morale that is common to all kinds of recreation and social life.” Jackson v. American Insurance Co., 404 So.2d 218, at 219 (La.1981). Therefore, we find that Hanks’ fall at the Petroleum Club did arise out of and in the course of his employment. See also Meaux v. Cormier, 554 So.2d 285 (La.App. 3d Cir.1989).
The final question for our consideration is whether Hanks’ back injury at the Petroleum Club resulted in a compensable disability. The trial court summarized the medical evidence as follows:
Dr. G. Gregory Gidman, a general orthopedist, testified by deposition. Dr. Gidman treated plaintiff’s injuries related to the slip and fall accident. He saw plaintiff a total of six times. Plaintiff related complaints of back, neck, left shoulder and right elbow pain. Dr. Gid-man had plaintiff undergo a CAT scan of the cervical spine. This test revealed diffuse spondalytic disease. Dr. Gidman explained that this was arthritis which was diffused in the cervical area. Dr. Gidman stated that plaintiff’s main problem was this generalized arthritic condition which was aggravated by the fall. In his opinion the symptoms plaintiff described were consistent with the slip and fall accident. He was unable to state whether an operation would help plaintiff or not. He felt that plaintiff was disabled from performing his work.
Dr. Gidman had also seen plaintiff the previous year for his wrist injury. He stated that plaintiff did not complain at that time of any arthritic condition in his neck or back. He again opined that the fall aggravated this pre-existing condition.
Dr. John E. Cobb, an orthopedic surgeon, also saw plaintiff in connection with these injuries. Dr. Cobb testified by deposition wherein he came to basically the same conclusions as Dr. Gidman except that Dr. Cobb recommended surgery for plaintiff. He also recommended that if plaintiff returns to work it should be to light sedentary work. Dr. Cobb explained that the more manual labor plaintiff performs the more his condition will deteriorate. Plaintiff is, in his opinion, more at risk now than before the slip and fall due to the aggravation [of] his degenerative condition that occurred as a result of the fall. Neither physician felt that plaintiff was fabricating his symptoms.
We have reviewed the medical testimony in the record and agree with the trial *534 court’s synopsis. Accordingly, we find that Hanks was disabled at the time of trial because of the back injury he sustained in the slip and fall accident at the Petroleum Club in March 1987. He is therefore entitled to an award of temporary total disability benefits, including weekly compensation and medical benefits, in an amount to be determined by the trial court on remand.
In his petition, Hanks made demand for penalties and attorney’s fees. However, we believe the defendants reasonably controverted the claim, although their position was ultimately determined to be without merit. Therefore, penalties and attorney’s fees are denied.
For the foregoing reasons, the judgment of the trial court is reversed and remanded. Upon remand, the trial court is to determine the amount Horace Hanks is entitled to in weekly compensation benefits and medical benefits, and such amount is to be awarded with legal interest. Costs of these proceedings, both at the trial and appellate levels, are to be paid by the defendants, Grey Wolf Drilling Co. and First Horizon Insurance Co.
REVERSED AND REMANDED.